

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1030-10

**ROBERT ALAN YOUNG, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### COMAL COUNTY

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J. and PRICE, JOHNSON, KEASLER, HERVEY and ALCALA, JJ., joined. WOMACK, J., dissented. MEYERS, J., did not participate.

O P I N I O N

Appellant, a registered sex offender, moved to a new residence but failed to notify authorities of his move as required by statute. The two-paragraph indictment alleged that appellant (1) failed to notify the Comal County Sheriff's Office seven days prior to changing his address; *or* (2) failed to provide the Sheriff's Office with proof of identity and residence within seven days after the move. At appellant's trial, the jury charge tracked the disjunctive

wording of the indictment and permitted a conviction if the jury unanimously found that appellant failed to report his change of address. The jury charge did not require the jury to be unanimous on whether appellant failed to report *before* or *after* moving. The Austin Court of Appeals affirmed appellant's conviction, holding that the trial judge did not err in his jury charge.[1]

We granted appellant's petition for discretionary review to address jury unanimity in the context of a defendant's failure to comply with sex-offender reporting requirements.[2] We agree with the court of appeals and hold that the jury charge properly set out a single "failure to report" offense with two distinct manners and means.

## I.

### A.     Background

Appellant was charged with violating Article 62.055(a) of the Code of Criminal Procedure[3] for failing to notify law enforcement of his change in address, both before and

---

[1] *Young v. State*, 311 S.W.3d 711, 716 (Tex. App.—Austin 2010).

[2] Appellant's grounds for review as stated in his original *pro se* petition for discretionary review are as follows:
1.     Whether the court of appeals erred in finding the trial court acted within its discretion in allowing a non-unanimous jury verdict in violation of the Texas Constitution and [Texas Code of Criminal Procedure].
2.     Whether the court of appeals erred in finding the trial court acted within its discretion in allowing a non-unanimous jury verdict in violation of the United States Constitution.

[3] TEX. CODE CRIM. PROC. art. 62.055(a) ("Change of Address; Lack of Address"). That statute reads, in pertinent part:
> If a person required to register under this chapter intends to change address . . . the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority . . . and provide the authority and

after his move.

The evidence at trial showed that appellant pled guilty to a charge of sexual assault in June of 2001, and he was sentenced to two years in prison. Because sexual assault is a "reportable conviction," appellant was required to register as a sex offender[4] and to annually verify his registration information for life.[5] In addition to these reporting requirements, all registered sex offenders are required to give notice in person to local law enforcement when they intend to change their address and again after they have done so.[6]

Immediately after his release from prison in early 2003, appellant registered with the Comal County Sheriff's Department and began living in Canyon Lake. The next five years passed without incident as appellant annually re-registered on his birthday and was fully compliant. When he moved to a new residence in 2004, appellant gave the Comal County sex-offender program coordinator notice of his forthcoming change of address, met with the

---

the officer with the person's anticipated move date and new address. If the person required to register changes address, the person shall, not later than . . . the seventh day after changing the address . . . report in person to the local law enforcement authority in the municipality or county in which the person's new residence is located and provide the authority with proof of identify and proof of residence.

[4] TEX. CODE CRIM. PROC. arts. 62.001(5)(A) (listing sexual assault as a "reportable conviction or adjudication" for purposes of the Texas Sex Offender Registration Program), 62.051(a) (mandating registration for persons who have a reportable conviction).

[5] TEX. CODE CRIM. PROC. arts. 62.001(6)(A) (categorizing sexual assault as a "sexually violent offense"), 62.101(a)(1) (imposing a duty of lifetime registration for persons convicted of a "sexually violent offense").

[6] TEX. CODE CRIM. PROC. art. 62.055(a).

coordinator, and signed a "CR-32"–a form produced by the Texas Department of Public Safety that outlines what a sex offender must do to maintain his registration, including the obligation to inform law enforcement of any change of address. When appellant started a new job in 2006, he again met with the Comal County Sheriff and signed a second "CR-32."

Appellant's problems began on January 29, 2008, when he received an eviction notice from the owners of the apartment complex where he lived with his girlfriend, Vikki Dees. Although the apartment was leased in Ms. Dees's name, the landlords had permitted appellant to live there until they discovered his sex-offender status. He was given two weeks to leave. He moved some of his belongings to Colleen Zulyevic's home. Appellant failed to report his eviction and impending move to the Comal County Sheriff's Office, and their records indicated that he was still living at the apartment leased by Ms. Dees.

About two weeks after appellant moved to his new home, Ms. Zulyevic's next-door neighbors noticed they "had quite a few new neighbors moving next door." Appellant's unusual behavior caused the neighbors some concern.[7] After an acquaintance informed them that a sex offender was living next door to them, they filed a complaint with the sheriff's department. Deputies then discovered that appellant had not reported his change of address, so a warrant was issued for his arrest.

---

[7] The neighbors testified that their teen-aged daughter was bothered and "scared" by appellant's uninvited attention. Appellant was "constantly looking towards our house, talking to [their sixteen-year-old daughter], trying to get her attention." Furthermore, they said that a small mirror appeared in a tree outside their home that would allow someone to see whenever they opened their garage door.

Appellant was charged in a two-paragraph indictment.[8] The trial judge gave the jury a written charge that mirrored the language of the indictment but combined the indictment's two paragraphs into a single one connected by a bold and underlined "or."  This language informed the jurors that they could convict appellant if they found that he failed to give the Comal County Sheriff's Office notice of his change of address "not later than the seventh day before his intended change of address" or "not later than the seventh day after changing his address."  Although the jury charge stated, "Your verdict, if any, will be by unanimous vote," the charge did not require the jurors to unanimously agree on whether appellant failed to report *before* or *after* changing his address.  The jury returned a general verdict of guilty, and the trial judge sentenced appellant to ten years in prison.

---

[8] The two-paragraph indictment read, in pertinent part:
ROBERT ALAN YOUNG, hereinafter styled Defendant, on or about 15th day of February, 2008, did then and there intentionally and knowingly fail to comply with Code of Criminal Procedure, Chapter 62, Article 62.055, setting out the required conditions concerning address changes for a person with a reportable conviction, to-wit: the said ROBERT ALAN YOUNG did move to 355 Shady Ridge, Canyon Lake, Texas, and failed to notify the COMAL COUNTY SHERIFF'S OFFICE not later than the seventh day before his intended change of address . . . .

ROBERT ALAN YOUNG, hereinafter styled Defendant, on or about 15th day of February, 2008, did then and there intentionally and knowingly fail to comply with Code of Criminal Procedure, Chapter 62, setting out the required conditions concerning address changes for a person with a reportable conviction, to-wit: the said ROBERT ALAN YOUNG did move to 355 Shady Ridge, Canyon Lake, Texas, and the said ROBERT ALAN YOUNG failed to provide the COMAL COUNTY SHERIFF'S OFFICE with proof of identity and proof of residence not later than the seventh day after changing his address . . . .

**B.     The Court of Appeals Opinion**

Appellant claimed on direct appeal that the jury charge permitted a non-unanimous verdict in violation of both the Texas and United States Constitutions.  Specifically, he argued that the court's charge set out two separate and distinguishable offenses.

The Austin Court of Appeals rejected this argument, holding that the jury charge alleged a single offense because Article 62.055 "can be violated by failing to report the change in advance, afterwards, or both."[9]  The court analyzed the language in Article 62.055(a) to find the "statutory verb defining the criminal act," a method explained in *Ngo v. State*[10] and related cases, most notably *Huffman v. State*.[11]  Applying *Ngo*'s "statutory verb" approach and *Huffman*'s "focus"-based approach, the court of appeals reasoned that "the statutory verb defining the criminal act is 'report'" and "[t]he focus of the offense, here, is the duty to notify of a change in address, though there are multiple means by which a

---

[9] *Young v. State*, 311 S.W.3d 711, 715 (Tex. App.—Austin 2010).

[10] 175 S.W.3d 738, 746 n.24 (Tex. Crim. App. 2005) ("A handy, though not definitive, rule of thumb is to look to the statutory verb defining the criminal act.  That verb . . . is generally the criminal act upon which all jurors must unanimously agree.").

[11] 267 S.W.3d 902, 906 (Tex. Crim. App. 2008).  In *Huffman*, the defendant was involved in a "hit and run" accident.  He was later tried for the offense of failure to stop and render aid. *Id.* at 904.  The court's charge permitted jurors to convict Huffman if they found that he had "failed to immediately stop, return to the scene of the accident, or remain at the scene of the accident."  Huffman contended that this charge allowed the jurors to reach a non-unanimous verdict.  Using the "statutory verb" analysis of *Ngo*, this Court concluded that immediately stopping, returning to, and remaining at the scene of an accident are all alternative means of committing the same offense.  *Id.* at 908-09.  Further, the "focus" or gravamen of the offense is the "circumstances surrounding the conduct"; that is, "each victim, each accident" may result in a separate charge, but not each act of failing to stop at, return to, or remain at the scene of one single accident. *Id.* at 908.

person can fail to comply."[12]   The court concluded that the manner and means by which appellant violated Article 62.055 do not require unanimity.   Rather, "it is the act of reporting–or the failure to do so–upon which all jurors must agree."[13]   In other words, the jury must unanimously agree on whether appellant violated his duty to report a change of address but need not agree on the method by which that duty went unfulfilled.

Appellant now argues that his case is more analogous to *Ngo* than to *Huffman* in that "the State sought one conviction for failure to comply with the requirements of Chapter 62 by proving either of two different violations, occurring at two different times, and in two different ways."[14]

## II.

It has long been the case that juror unanimity is required in felony cases by the Texas Constitution and in all criminal trials by state statutes.[15]   Put simply, the jury must unanimously agree about the occurrence of a single criminal offense, but they need not be

---

[12] *Young*, 311 S.W.3d at 715-16.

[13] *Id.* at 715.

[14] Appellant's Brief at 12; *see also Ngo*, 175 S.W.3d at 744 ("The State charged all three offenses in three separate paragraphs within a single count of one indictment. It sought one conviction for the commission of one credit card abuse offense by proving any of three different criminal acts, occurring at three different times, and in three different ways.").

[15] *See* TEX. CONST. art. V, § 13; *see also* TEX. CODE. CRIM. PROC. arts. 37.02 (requiring unanimous verdicts in misdemeanors), 37.03 (verdicts in county court "must be concurred in by each juror"), 37.04 (verdict cannot be entered unless "in proper form and no juror dissents therefrom").

unanimous about the specific manner and means of how that offense was committed.[16] This

rule is not as clear as it might seem at first blush, however, as we continue to address

questions over precisely what it is the jury must unanimously agree on.

To clarify some of the difficulty surrounding the unanimity issue, this Court has

distinguished the three general categories of criminal offenses.[17] First, "result of conduct"

offenses concern the product of certain conduct. For example, murder is a "result of

conduct" offense because it punishes the intentional killing of another regardless of the

specific manner (e.g., shooting, stabbing, suffocating) of causing the person's death.[18] Thus,

the death of one victim may result in only one murder conviction, regardless of how the actor

accomplished the result.[19] With the second category, "nature of conduct" offenses, it is the

act or conduct that is punished, regardless of any result that might occur. The most common

---

[16] *See*, *e.g.*, *Huffman v. State*, 267 S.W.3d 902 (Tex. Crim. App. 2008); *Jefferson v. State*, 189 S.W.3d 305 (Tex. Crim. App. 2006) (jury not required to unanimously agree on whether injury to child was caused by commission or omission); *Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim. App. 1991) (not error in a capital-murder prosecution to allow the jury to convict if it found the defendant either committed murder in the course of aggravated sexual assault or in the course of a robbery).

[17] *Huffman*, 267 S.W.3d at 907.

[18] *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) ("Murder is a 'result of conduct' offense, which means that the culpable mental state relates to the result of the conduct, i.e., the causing of the death."); *Turner v. State*, 805 S.W.2d 423, 430 (Tex. Crim. App. 1991) ("Capital murder . . . is a 'result of conduct' offense.").

[19] *See Gamboa v. State*, 296 S.W.3d 574, 584 (Tex. Crim. App. 2009) (holding that alternate theories of capital murder may be alleged in the jury charge "so long as the same victim is alleged for the predicate murder").

illustration of this second category is that of many sex offenses,[20] where the act itself is the gravamen of the offense.[21]  Finally, "circumstances of conduct" offenses prohibit otherwise innocent behavior that becomes criminal only under specific circumstances.[22]  Unlawful discharge of a firearm is an example of this type of offense as it is the circumstances–the where, when, and how–under which a gun is fired that determines whether an offense was committed.[23]  A marksman is blameless if he fires his rifle at a target down a firing range, but if he turns around and shoots into the crowded parking lot, he has committed an offense.[24]

Generally the statutory language determines whether a crime is a "result of conduct," "nature of conduct," or "circumstances of conduct" offense.[25]  A "result of conduct" offense

---

[20] *Huffman*, 267 S.W.3d at 906 ("Sex offenses are also nature of conduct crimes, and we have uniformly required that different types of conduct specified in the various statutes be treated as separate offenses."); *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999) ("[Aggravated sexual assault] is a conduct-oriented offense in which the legislature criminalized very specific conduct of several different types.").

[21] *See Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985) (comparing the culpability requirements for injury to a child, a result of conduct offense, to rape under former Penal Code § 21.02 prior to the 1983 amendments; "By specifying the 'nature of the conduct' prohibited (having sexual intercourse) the Legislature indicated rape is a 'nature of conduct' crime and the required culpability must go to that element of conduct.").

[22] *See Huffman*, 267 S.W.3d at 907; *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989).

[23] *State v. Rodriguez*, No. PD-0463-08, ___ S.W.3d ___, 2011 WL 1261309, at *2 (Tex. Crim. App. Apr. 6, 2011) ("[T]he State must allege something about the setting or circumstances of discharging a firearm within city limits that demonstrates disregard of a known and unjustifiable risk.").

[24] *See id.*

[25] *See Alvarado*, 704 S.W.2d at 39.

generally requires a direct object for the verb to act upon: in the statutory language punishing murder, "causes" is the verb, and "death"–the result– is the direct object.[26] Further, different subsections in a "result of conduct" statute may punish distinctly different acts that cause the same result, and it is the result rather than the specific act that is the focus of the offense.[27] "Nature of conduct" offenses, on the other hand, generally use different verbs in different subsections, an indication that the Legislature intended to punish distinct types of conduct. For example, the credit-card-abuse statute criminalizes a wide range of different acts–stealing a credit card, receiving a stolen credit card, using a stolen credit card, and so forth.[28] With an offense whose criminality depends upon the "circumstances surrounding the  conduct," the focus is on the particular circumstances that exist rather than the discrete, and perhaps different, acts that the defendant might commit under those circumstances.  For example, in the failure to stop and render aid statute, the focus is upon the existence of an automobile accident.  That circumstance gives rise to a driver's duty to stop, return to the scene, and

---

[26] TEX. PENAL CODE § 19.02(b)(1); *see also Stuhler v. State*, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007) (applying the "eighth-grade grammar" test to the injury to a child statute).

[27] *See Jefferson v. State*, 189 S.W.3d 305 (Tex. Crim. App. 2006) (concluding that the offense of injury to a child is a "result of conduct" crime, and therefore the jury must be unanimous about the existence of the injury but not whether the injury was caused by an act or omission).

[28] *See Ngo v. State*, 175 S.W.3d 738, 744-45 (Tex. Crim. App. 2005) (the subsections of TEX. PENAL CODE § 32.31(b) punish distinctly different acts as indicated by the use of distinctly different verbs, such as "receives," "steals," and "presents"); *Pizzo v. State*, 235 S.W.3d 711, 716-19 (Tex. Crim. App. 2007) (holding that different types of conduct under the indecency-with-a- child statute are different "nature of conduct" offenses).

render aid to any injured people.[29]  Thus, in "result of conduct" offenses, the jury must be unanimous about the specific result required by the statute.  With "nature of conduct" crimes, the jury must be unanimous about the specific criminal act, and with "circumstances surrounding the conduct" offenses, unanimity is required about the existence of the particular circumstance that makes the otherwise innocent act criminal.

No matter which category an offense falls into, the key concept remains the same.  One looks to the gravamen or focus of the offense: Is it the result of the act, the nature of the act itself, or the circumstances surrounding that act?  With that general background, we turn to the present case.

## III.

**A.     The Failure to Report a Change of Address is Not an Umbrella Offense.**

Appellant asserts that the registration offense he is charged with under Chapter 62 is analogous to the continuing criminal enterprise statute in *Richardson v. United States* and the credit-card-abuse statute in *Ngo* in that it is an umbrella statute.  He argues that the nine subchapters contained within Chapter 62 are "filled with detailed instructions and requirements too innumerable to count," and "that it would 'aggravate the dangers of unfairness' to treat each individual violation as a means, rather than an element upon which

---

[29] *Huffman v. State*, 267 S.W.3d 902, 907-08 (Tex. Crim. App. 2008) (concluding that the offense of failure to stop and render aid is a "circumstances surrounding the conduct" crime with the focus of the crime being the circumstance of an "accident").

the jurors must unanimously agree."[30]

Appellant is correct that Article 62.102 is a generalized "umbrella" statute that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62.[31] That chapter contains numerous distinct requirements in its various statutes, such as the duty to register as a sex offender,[32] the duty to change online identifiers,[33] the duty to report a regularly visited location,[34] the duty to report one's status as a sex offender when applying for a driver's license,[35] as well as the duty to report any change of address.[36]

Appellant analogizes the umbrella statute criminalizing any failure to comply with the requirements of Chapter 62 with the federal offense of "engaging in a continuing criminal enterprise" that the Supreme Court addressed in *Richardson v. United States*.[37] In *Richardson*, the Court held that the jury had "to agree unanimously about which specific

---

[30] Appellant's Brief at 9 (quoting *Richardson v. United States*, 526 U.S. 813, 819 (1999)).

[31] TEX. CODE CRIM. PROC. art. 62.102(a) ("A person commits an offense if the person is required to register and fails to comply with any requirement of this chapter.").

[32] *See* TEX. CODE CRIM. PROC. arts. 62.001(5)(A) (listing several sex offenses as a "reportable conviction or adjudication"), 62.051 (Registration: General).

[33] TEX. CODE CRIM. PROC. art. 62.0551 (Change in Online Identifiers).

[34] TEX. CODE CRIM. PROC. art. 62.059 (Registration of Persons Regularly Visiting Location).

[35] TEX. CODE CRIM. PROC. art. 62.060 (Requirements Relating to Driver's License or Personal Identification Certificate).

[36] TEX. CODE CRIM. PROC. art. 62.055 (Change of Address; Lack of Address).

[37] 526 U.S. 813 (1999) (addressing the unanimity requirement of 21 U.S.C. § 848).

violations make up the 'continuing series of violations'" when the government had alleged violations of numerous different statutory drug crimes as comprising the umbrella offense of the continuing criminal enterprise.[38] The jury was asked to decide whether the defendant had, by engaging in any three narcotics violations, committed the general offense of engaging in a continuing criminal enterprise.[39] The judge explicitly (and incorrectly) told the jury that it did not have to agree on which particular three narcotics offenses the defendant committed.[40] That was error.

In this case, if the State had alleged that appellant failed to report a change of address, failed to register with local authorities, and failed to register a regularly visited location, the indictment would be mixing various statutory duties contained in different statutory provisions in Chapter 62. If that had occurred, under the reasoning of *Richardson*, the jury would have to unanimously agree upon one specific statutory failure. But that is not what occurred in this case. The State alleged one specific circumstance or duty–the duty to report a change of address–and two specific failures to fulfill that duty–the duty to report an intended change of address before moving and the duty to report a completed change of address. Appellant's case is not one of mixing different statutory offenses in one indictment or jury charge, so the *Richardson* reasoning does not apply.

---

[38] *Id.* at 815.

[39] *Id.* at 816.

[40] *Id.*

Appellant also contends that, even if he was charged with a single statutory offense, the State presented evidence of two distinct acts which occurred at different times. He claims that the failure "to notify authorities of intent to move seven days in advance of the intended move date is not the same and certainly cannot even be accomplished at the same time as notifying authorities seven days after an actual move."[41] From this, appellant reasons that his case is comparable to the credit card abuse statute in *Ngo*, in which the State charged the defendant with several violations "of the same generic offense by the commission of different criminal acts in a single paragraph."[42]

Appellant is correct that there is a similarity between the umbrella statute criminalizing credit-card-abuse and Article 62.102, the umbrella statute criminalizing the failure to comply with any sex offender registration requirements. The subsections of Penal Code Section 32.31(b) prohibit eleven distinct forms of credit-card or debit-card abuse, including stealing a card, using a fictitious card, and failing to issue goods or services when paid with a card.[43] These subsections "are all credit card abuse offenses, to be sure, but they are not the same, specific credit card abuse criminal acts committed at the same time or with the same *mens rea* and the same *actus reus*."[44] Had the State, in this case, charged different

---

[41] Appellant's Brief at 12-13.

[42] *Id.* at 13; *see Ngo*, 175 S.W.3d at 744-45 n.22.

[43] TEX. PENAL CODE § 32.31(b)(1)-(11).

[44] *Ngo*, 175 S.W.3d at 745.

statutory violations contained in Chapter 62, *Ngo*, like *Richardson*, would require a unanimous verdict on which specific statutory duty appellant failed to comply with. But the State charged only one specific statutory duty with one violation of that duty–the failure to report his change of address from Ms. Dees's apartment to Ms. Zulyevic's apartment. Appellant argues that this was two crimes, not one.

**B.     The Failure to Report a Change of Address Is One Crime Per Move.**

To address appellant's argument, we look to the gravamen or focus of the offense created by Article 62.055(a).[45] The forbidden act is failing to inform law enforcement about an impending or completed change of residence. The primary purpose of creating and maintaining a sex-offender registry is to "give local law enforcement officers a means of monitoring sex offenders who are living within their jurisdiction in order better to thwart repeat offenses."[46] Knowing where a sex offender lives is arguably the simplest and best way to monitor him. By failing to report where he is residing, the sex offender is subverting the objective of the registry. The community and law enforcement want to know where the sex offender lives so they may take proper precautions.[47]

---

[45] *See Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008).

[46] House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. S.B. 259, 72nd Leg., R.S. (1991).

[47] House Comm. on Public Safety, Bill Analysis, Tex. S.B. 267, 74th Leg., R.S. (1995) ("The local community would be notified through the newspapers and could request information through local law enforcement authorities. This would help the entire community, not just a sex offender's immediate neighbors, protect itself.").

We agree with the reasoning in *Villanueva v. State*[48] that the Legislature intended for the unit of prosecution to be one offense for each change of address.[49]  The language of Article 62.055 states that a sex offender has a duty to report a change of address to the proper authorities both before and after a move.  Failure to comply is an offense.[50]  Because Article 62.055 punishes what would otherwise be innocent behavior–moving to a new address–under the circumstances that the person is a registered sex offender, we conclude that the statute creates a "circumstances surrounding the conduct" offense.

There are obvious parallels between Article 62.055 and the failure to stop and render aid, the issue in *Huffman*.[51]  Under Section 550.021(a) of the Texas Transportation Code, a driver involved in an accident which results in injury or death shall

> (1)    immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
> (2)    immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and
> (3)    remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

Each subsection of Section 550.021(a) is dependent on the others, and failing to stop, return,

---

[48] 257 S.W.3d 527 (Tex. App.—Austin 2008, no pet.).

[49] *Id*. at 530 (holding that Article 62.055 allows the State to charge a defendant "if he changes his address without registering the change," but not for multiple offenses for each day, week, or month the defendant failed to register while staying at the same address).

[50] TEX. CODE CRIM. PROC. art. 62.102(a) ("A person commits an offense if the person is required to register and fails to comply with any requirement of this chapter.")

[51] *Huffman*, 267 S.W.3d at 904 (defendant charged with violating TEX. TRANSP. CODE §§ 550.21, 550.023).

remain, or any combination of the three results in only a single offense.[52] As we explained, "One could fail to stop, one could stop close to the scene but not return, or one could stop at the scene or return to the scene but not remain. In any one of those cases, only one failure can be meaningfully ascribed to the driver."[53] The subsections of 550.021(a) therefore present three manners and means by which a defendant may fail to stop and render aid.[54] The statute sets out a duty to stop and render aid when a relevant circumstance is present–an accident involving injury or death–but this duty can be violated in one of three ways. The jury must unanimously agree that the defendant violated the statutory duty, but need not be unanimous concerning the specific manner and means of the violation.[55]

Similarly, Article 62.055(a) creates a duty to notify law enforcement when a relevant circumstance is present–a sex offender changes addresses–but can be violated in either of two ways. The focus of the statute is on giving notification to law enforcement and not the means by which a sex offender failed to do so.[56] Reporting a change of address "not later than the seventh day before the intended change" and "not later than the. . . seventh day after changing the address" are therefore alternative manners and means of committing a single

---

[52] *Id.* at 909.

[53] *Id.*

[54] *Id*; *see also id*. at 912 (Cochran, J., concurring).

[55] *Id.* at 909.

[56] *See id.* at 908 (an "accident" is the focus of §550.21(a) and not the means by which the driver failed to stop and render aid).

offense.[57]   Jurors must unanimously agree only that a sex offender failed to fulfill his reporting duty; they are not required to agree as to how he failed that duty.

In sum, appellant was indicted for a single offense of failing to report a change of address, and the State alleged he committed it in one of two alternative ways.  The jury was charged by the trial judge in the disjunctive regarding these alternative manners and means.  The court of appeals correctly decided that unanimity was required as to the failure to report a change of appellant's address but not as to whether appellant committed the offense by failing to report before the move, after it, or both.   We therefore affirm the judgment of the court of appeals.

Delivered: June 15, 2011
Publish

---

[57] *Cf. Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (op. on reh'g) ("Because appellant's indictment did not allege different offenses but only alleged different ways of committing the same offense, the court properly furnished the jury with a general verdict form.").