

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0421-14

---

**LEO DEMORY ROBINSON, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

---

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., and HERVEY, YEARY, and NEWELL, JJ., joined. KELLER, P.J., filed a concurring opinion, in which HERVEY, YEARY, and NEWELL, JJ., joined. ALCALA, J., filed a concurring opinion, in which MEYERS, JOHNSON, and RICHARDSON, JJ., joined.

### O P I N I O N

The court of appeals affirmed Robinson's conviction for failing to report under the sex-offender registration requirements. We must decide what degree of mental culpability the statute requires and whether to consider a trial judge's findings of fact and conclusions of law in a sufficiency of the evidence review. We hold that a conviction under Article 62.012 requires knowledge or recklessness only to the duty-to-register element of the offense,

and that an appellate court should disregard the trial judge's findings of fact and conclusions of law in reviewing for sufficiency of the evidence. We therefore affirm the court of appeals' opinion.

## I. Background

Robinson was indicted for the offense of failure to comply with sex-offender registration requirements. The indictment alleged that Robinson intentionally, knowingly, or recklessly failed to report his intent to move and his new address where he intended to reside.[1] Robinson waived his right to a jury, elected a bench trial, and pleaded not guilty to the trial judge.

As a result of his previous conviction for burglary of a habitation with intent to commit sexual assault,[2] Robinson was required to register as a sex offender under Texas Code of Criminal Procedure Chapter 62.[3] After his release from confinement for his burglary conviction in early 2010, Robinson began registering annually with the Glenn Heights Police Department, listing his address as his aunt's residence in Glenn Heights, Texas. In February 2010, when responding to a disturbance call at Robinson's aunt's house, Detective Benson conducted a compliance check to ensure Robinson was still living there. While conducting the compliance check, Benson spoke with two people who told him that Robinson had moved

---

[1] TEX. CODE CRIM. PROC. arts. 62.102(a), 62.055(a) (West 2012).

[2] TEX. PENAL CODE § 30.02(a) (West 2012).

[3] TEX CODE CRIM. PROC. arts. 62.001(5), 62.051(a).

out. Benson checked the room where Robinson was staying and found the bed without sheets and the drawers and closet empty.

Arnetha Barnes, Robinson's aunt, testified at his bench trial that, although she did not know the exact day Robinson moved out, he lived there until May 2010. She disputed Benson's description of Robinson's room, claiming she always kept sheets on his bed and some of Robinson's clothes were in the closet even after he moved out.

Tommy Phillips, Robinson's parole officer, testified that Robinson moved to Dallas before May 2010. According to Phillips, in April 2010, Robinson sent a fax to the Glenn Heights Police Department notifying them that Robinson had moved from his aunt's house to Dallas in March 2010. Phillips, however, later testified that the fax contained erroneous information regarding Robinson's change of address and was instead intended to notify the police department of Robinson's intent to move, rather than providing notice of a past move. On May 1, 2010, Barnes told Phillips that Robinson had moved out. Phillips testified that he did not know the exact date Robinson moved from Glenn Heights to Dallas. Phillips further testified that Robinson told him that he was having problems notifying Glenn Heights Police Department of his intent to move because when he attempted to report in person, he was told no one was available to help him and he needed to come back at another time. Phillips conducted his own compliance check on May 1, 2010 at Robinson's Glenn Heights address and was told that Robinson had already moved to "his new place."

Glenn Heights Detective Howard was the officer who handled Robinson's sex-

offender registration. Howard testified that Robinson was required to register as a sex offender annually for life. Although he acknowledged receiving the fax from Robinson's parole officer, Howard noted the fax did not qualify as proper notice under the law—it was not done in person nor was it provided within seven days of moving.

Robinson testified in his defense. He could not provide the exact date of his move. But he did testify that he knew he was required to provide in-person notification of his intent to change his address at least seven days before he moved, and although he attempted to comply with the pre-move notice, the Glenn Heights Police Department refused to accept his notice. He maintained that he repeatedly attempted to provide notice, but each time he was turned away. Robinson testified, "I would see Mr. Howard. He was, like, 'Come back tomorrow. I don't have time.'" Howard refuted Robinson's testimony, claiming that he was not aware of Robinson's attempt to provide notification of his intent to change his address.

The judge found Robinson guilty and sentenced him to two years' confinement, suspended and probated for five years. The judge made several findings of fact, indicating that he believed portions of Robinson's testimony and other evidence of Robinson's "substantial compliance" with the requirements. The judge also commented on the nature of the law: "[I]t is to a certain extent strict liability if you know [you're] supposed [to] register, which you did, and you do not strictly follow the requirements of article 62.055, then you are guilty according to my reading of the law."

On appeal, Robinson alleged that, because there was evidence that he attempted to

give the required notice, the evidence is legally insufficient to show that his failure to give the required notice was intentional, knowing, or reckless.[4] Relying on several sister court of appeals' decisions, the Dallas Court of Appeals held that to the extent a culpable mental state (or mens rea) is required for an Article 62.102(a) offense, the culpable mental state applies only to the defendant's actual knowledge of the statutory obligations.[5] The court of appeals alternatively held that, even if the mens rea requirement applied to the act of notification itself, as opposed to the knowledge of the obligation, the State presented sufficient evidence to support the conviction.[6] We granted Robinson's petition for discretionary review to review the court of appeals' interpretation of Article 62.102(a) and its legal sufficiency analysis.

## II. Culpable mental state required for Article 62.102(a)

Article 62.102(a) states that a person commits the offense of failure to comply with sex-offender registration requirements "if the person is required to register and fails to comply with any requirement of this chapter."[7] "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the

---

[4] *Robinson v. State*, No. 05-12-01502, 2014 WL 428029, *2 (Tex. App.—Dallas Feb. 3, 2014) (not designated for publication).

[5] *Id.*

[6] *Id.* at *3.

[7] TEX. CODE CRIM. PROC. art. 62.102(a).

definition plainly dispenses with any mental element."[8]  Because Article 62.102(a) does not contain a culpable mental state and does not clearly dispense with one, § 6.02(c) requires that Article 62.102(a) be read to require intent, knowledge, or recklessness to establish criminal responsibility.[9]  The question then becomes what mental states apply and to what element must they attach—the duty to register or the failure to comply with one of Texas Code of Criminal Procedure Chapter 62's requirements.  The answer turns on the gravamen of the failure-to-comply offense.

We distinguish offenses into three different categories of offenses based on the offense-defining statute's gravamen, or focus: "result of conduct," "nature of conduct," or "circumstances of conduct" offenses.[10]  Result-of-conduct offenses concern the product of certain conduct.[11]  Nature-of-conduct offenses are defined by the act or conduct that is punished, regardless of any result that might occur.[12]  Lastly, circumstances-of-conduct offenses prohibit otherwise innocent behavior that becomes criminal only under specific circumstances.[13]

---

[8]  TEX. PENAL CODE § 6.02(b).

[9]  *Id.* § 6.02(c) ("If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility.").

[10]  *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011).

[11]  *Id.*

[12]  *Id.*

[13]  *Id.*

Article 62.102(a) is a generalized "umbrella" statute that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62.[14] Failing to comply with Chapter 62 is not criminal by its very nature, but rather is made unlawful by the circumstances—the duty to comply by virtue of a reportable conviction. Therefore, the failure-to-register offense is a circumstances-of-conduct offense, and the gravamen of the offense is the duty to register.[15] Although all circumstances-of-conduct offenses naturally contain an additional conduct element, the conduct itself is not necessarily an additional gravamen.

Although *McQueen v. State*[16] is factually distinguishable, its holding is nonetheless authoritative in resolving the present case. The *McQueen* Court addressed the unauthorized-use-of-a-vehicle statute that states "[a] person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner."[17] That case presented the common issue of deciphering a statute's language to answer the question of how far down the sentence the stated culpable mental state runs. The Court held that "what separates lawful operation of another's motor vehicle from unauthorized use is the actor's knowledge of a 'crucial circumstance surrounding the

---

[14] *Id.* at 425.

[15] *See id.* at 427.

[16] *McQueen v. State,* 781 S.W.2d 600 (Tex. Crim. App. 1989).

[17] *Id.* at 603. *See* TEX. PENAL CODE § 31.07.

conduct'—that such operation is done without the effective consent of the owner."[18]  As a

result, this Court held that

> some form of culpability must apply to those "conduct elements" which make the overall conduct criminal. Therefore, we hold that Sec. 31.07 encompasses two "conduct elements", viz: that the defendant intentionally or knowingly operated a vehicle (nature of conduct) knowing that such operation was without the effective consent of the owner (circumstances surrounding conduct).[19]

So *McQueen* established that when the circumstances of the conduct render specific conduct

unlawful, a culpable mental state must attach to the circumstances of the conduct.

Because Article 62.012 fails to provide a culpable mental state and does not clearly

dispense with one, Penal Code § 6.02(c) requires we read one into the statute.  Like the Court

in *Young v. State*[20] recognized, the failure-to-stop-and-render-aid statute provides a strong

analogy to the statute at issue here.  In *Huffman v. State,* we considered the offense of failure

to stop and render aid found in Transportation Code § 550.021, which also does not contain

lacks an explicit culpable mental state.[21]  Section 550.021 provides in relevant part:

> (a) The operator of a vehicle involved in an accident resulting in injury to or death of a person shall:
>
> > (1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;

---

[18]  *McQueen*, 781 S.W.2d at 604.

[19]  *Id.*

[20]  *Young*, 341 S.W.3d at 427.

[21]  *Huffman v. State,* 267 S.W.3d 902 (Tex. Crim. App. 2008).

(2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and

(3) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

(b) An operator of a vehicle required to stop the vehicle by Subsection (a) shall do so without obstructing traffic more than is necessary.

(c) A person commits an offense if the person does not stop or does not comply with the requirements of this section.

Concluding that the focus of this statute was on an "accident," the Court stated that a culpable mental state must attach to this circumstance because it is the gravamen of the offense.[22] Because Huffman's failure to stop, return, or remain became criminal only due to his knowledge of circumstances surrounding the conduct—an accident and a victim suffering an injury—the offense was therefore a circumstances-surrounding-the-conduct offense.[23]

Like the duties attendant to an accident and resulting injury, Chapter 62's registration requirements are triggered only by a person's duty to register. Therefore, like the failure-to-stop-and-render-aid offense in *Huffman*, the failure-to-register offense requires a culpable mental state only regarding the circumstances of the conduct. And although Penal Code § 6.02(c) generally requires that the culpable mental states of intent, knowledge, or recklessness apply when reading mental culpability into the statute under § 6.02(b), the

---

[22] *Id.* at 908 (citing *McQueen*, 781 S.W.2d at 603).

[23] *Id.*

statutory definition of "intent" contains no provision for circumstances surrounding conduct, unlike the definitions of knowledge and recklessness.[24] Therefore, intent does not apply. We hold that *McQueen, Young,* and Penal Code § 6.02(c) require that the culpable mental states of knowledge and recklessness apply only to the duty-to-register element of Article 62.012's failure-to-comply offense.

### III. Legal Sufficiency Standard Remains Unchanged in Light of Judge's Findings of Fact and Conclusions of Law

In his petition's first, second, and fourth grounds, Robinson argues that the court of appeals erred by failing to consider the trial judge's findings of fact and conclusions of law when conducting its review of the sufficiency of the evidence in a bench trial. We disagree.

First, the appellate standard for reviewing the sufficiency of the evidence is based on a hypothetical rational fact finder, rather than on the actual fact finder's particular thought process. In jury trials and in bench trials, we view the evidence in the light most favorable to the verdict in order to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt.[25] A conviction that is not rationally based on the evidence violates the Due Process Clause, whether a judge or jury sits

---

[24] *See* TEX. PENAL CODE § 6.02(c) (only intent, knowledge, or recklessness apply when required by 6.02(b); *id.* § 6.03(b)–(c) (providing that knowledge and reckless apply with respect to circumstances surrounding a person's conduct).

[25] *See Jackson v. Virginia,* 433 U.S. 307, 309, 319 (1979); *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

as the fact finder in the case.[26]

Second, no statute authorizes findings of fact and conclusions of law after a bench trial in a criminal case. The Code of Criminal Procedure provides that the "verdict [of the jury] in every criminal case must be general."[27] Likewise, the "judgment of the court in a criminal case, like the verdict of the jury, must be a general one, although there is no specific statutory provision" with respect to court trials.[28] Furthermore, neither the Code of Criminal Procedure nor any other law permits findings of fact after a court trial in a criminal case.[29]

In contrast, trial judges in Texas can make findings of fact and conclusions of law in civil bench trials given the use of special issues in a civil jury trial, and these findings have the same force and dignity as a jury's verdict upon questions.[30] But because criminal jury verdicts are general rather than based on special issues, it follows that criminal trial court judgments should similarly be general, rather than accompanied by findings of fact and conclusions of law.

Third, the common law for criminal cases did not permit findings of fact and conclusions of law after a bench trial, so there is no historical basis for permitting them in the absence of statutory authority. Texas common law disallowed findings and conclusions

---

[26] *Jackson,* 433 U.S. at 317.

[27] TEX. CODE CRIM. PROC. art. 37.07, § 1(a).

[28] *Mattias v. State,* 731 S.W.2d 936, 939 (Tex. Crim. App. 1987).

[29] *Id.*

[30] *See id.* at 939; *Caldwell v. Barnes,* 154 S.W.3d 93, 98 (Tex. 2004).

after a bench trial for criminal cases.[31] Although this Court has appeared to approve of the consideration of findings of fact and conclusions of law when they are consistent with a trial court's judgment,[32] such findings are inconsistent with the standard of a hypothetical rational fact finder that we use to determine the sufficiency of the evidence, and are not permitted. We conclude that an appellate court should disregard a trial court's findings of fact and conclusions of law in their entirety, even when they support the trial court's judgment. To the extent *Mattias* and subsequent cases suggest otherwise, we disavow them. We hold that sufficiency-of-the-evidence reviews in bench trials should be conducted under the well-established *Jackson* standard without consideration of a trial court's unauthorized findings of fact and conclusions of law.[33]

## IV. The Evidence is Legally Sufficient

The court of appeals properly applied a traditional review of the sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt.[34] The court's initial analysis, which required a culpable mental

---

[31] *Mattias,* 731 S.W.2d at 939.

[32] *See, e.g., id.* at 940; *Poindexter v. State,* 153 S.W.3d 402, 412 (Tex. Crim. App. 2005) ("When the trial judge found appellant guilty, he expressed his view that the evidence, including the hearsay evidence, was probative and sufficient to support his finding. We cannot reweigh or recharacterize that evidence.").

[33] *See Jackson,* 443 U.S. at 309, 319.

[34] *See id.*

state as to Robinson's duty to register but not his failure to register, correctly applied the elements of the offense. To sustain Robinson's failure-to-comply conviction, the statute requires that Robinson (1) knew or was reckless about whether he had a duty to register as a sex offender, and (2) failed to report in person to the local law-enforcement authority his intent to change his address, not later than the seventh day before the intended change.[35]

Robinson himself testified that he was aware of his duty to register, so we find the evidence sufficient as to this first element. As to the second element, there is ample evidence from which a rational fact finder could conclude that Robinson failed to provide the proper pre-move notification. Detective Benson's February 27 visit to Robinson's aunt's residence revealed that Robinson no longer lived there, establishing that Robinson had moved from his aunt's residence as early as February 2010. According to parole officer Phillips's testimony, Robinson told Phillips that he intended to move from his aunt's residence in March, and Phillips sent a fax to the Glenn Heights Police Department in April to notify them of Robinson's intent to move. This evidence convincingly established that on or about May 7, 2010, Robinson failed to report in person an intended change of address to the Glenn Heights Police Department not later than the seventh day before he changed his address. We therefore overrule Robinson's first, second, and fourth grounds for review.

### V. Conclusion

We affirm the court of appeals' judgment.

---

[35] *See* TEX. CODE CRIM. PROC. art. 62.102(a), 62.055(a).

DELIVERED: July, 1, 2015

PUBLISH