**Opinion issued December 8, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00930-CR

———————————

**BRIDGET RENAE MILLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 74232**

## MEMORANDUM OPINION

A jury convicted Bridget Renae Miller of first-degree felony injury to a child and sentenced her to 99 years' imprisonment. On appeal, Miller contends that insufficient evidence supports her conviction. She further contends that the trial court erred by (1) failing to require a unanimous verdict as to the manner in which

she caused the injury; and (2) overruling her objection to the State's sidebar comments. Finding no reversible error, we affirm.

## BACKGROUND

The State charged Miller with injury to a child for causing injuries to C.F., age four, which resulted in his death. C.F.'s father, Clifton Tarrant, was Miller's boyfriend. Tarrant and C.F.'s mother, Sandra Vela, were estranged. At the time of the injury, Miller lived with Tarrant and C.F. in a house in Lake Jackson. On the evening of June 19, 2012, while preparing to move out of the house, Tarrant and a friend loaded a refrigerator, couches, and other items into a rented trailer to transport them to their new house. Miller and Tarrant awoke the following morning. Tarrant was late for work, so he dressed and hurried to work. According to her testimony, Miller checked on C.F. after smelling feces; she discovered that he had soiled himself in the night. She woke up C.F., walked him to the bathroom, and put him in the shower. Miller then received a phone call from Tarrant, who asked if she had seen his work security badge, which he had forgotten at home. Miller checked, but did not find the badge. She then checked on C.F. and went to the kitchen to start a pot of coffee. After dumping the old coffee but before she could fill the pot with fresh water, she heard a thud and a small cry. She ran back to the bathroom, where she found C.F. lying on his back in the bathtub with a

2

bump on his head. Miller called Tarrant and told him to come home immediately. Miller and Tarrant rushed C.F. to the nearby Brazosport Hospital.

Due to his dire condition, C.F. was transported by helicopter from Brazosport Hospital to Memorial Hermann hospital in Houston, where he underwent major surgery. It was determined that C.F. had suffered a severe brain injury. When life support was withdrawn some weeks later, C.F. died. The medical examiner classified the death as a homicide, naming blunt trauma to the head as the cause of death.

Miller was indicted by a grand jury for first-degree felony injury to a child. TEX. PENAL CODE ANN. § 22.04 (West Supp. 2014). The first four paragraphs alleged that Miller "intentionally or knowingly cause[d] serious bodily injury to [C.F.]" by (1) causing his head to strike an unknown object, (2) causing an unknown object to strike his head, (3) shaking him, or (4) causing trauma to his head by "manner and means unknown." The fifth paragraph alleged that Miller "intentionally or knowingly, by omission, cause[d] serious bodily injury to [C.F.] . . . by failing to seek and/or provide timely medical care" when she had assumed care, custody, or control of him.

At trial, the State proffered evidence that conflicted with Miller's account of the cause of C.F.'s injuries. The State presented the testimony of the various doctors and nurses who had treated C.F. and investigated his injury. Jarret

3

Browning, the triage nurse at Brazosport Hospital, noted that the bruising on C.F.'s face was inconsistent with the story of a fall and injury to the back of his head. Heather Hill, the nurse in charge at Brazosport Hospital, reviewed her notes which documented numerous other injuries to C.F.'s body, but which did not mention any injury to the back of C.F.'s head. Corey Anderson, the emergency room doctor at Brazosport Hospital, discussed the "massive" hematoma on the right side of C.F.'s brain and opined that it was "unlikely . . . [that] these significant injuries [were caused by] a standing ground-level fall in a bathtub." The medical examiner who autopsied C.F. found that the death was a homicide and that the cause was blunt trauma to the head. Judianne Kellaway, an ophthalmologist who examined C.F., noted that C.F. had retinal shearing consistent with "severe shaking injuries."

The State also challenged Miller's story of the fall with phone records and her prior statements made to investigators. After presenting background testimony from Sandra Vela about C.F.'s condition in the preceding weeks and from Tarrant's friend about the night before, the State called Aimee Mitchell, an acquaintance of Miller's. Mitchell testified that Miller had texted her seeking a place to stay in Houston while someone was in the hospital. According to Mitchell, this text message exchange occurred beginning at 6:01 a.m., some thirty minutes before Miller claimed she woke up. Police detective Robert Turner and CPS investigator Haley Deem both testified about Miller's account of C.F.'s injury

4

on the day it happened. Relying on the phone records, Turner asked about Miller's telephone calls to Tarrant at 6:52 and 7:03. Miller claimed that Tarrant called her at 6:52 to ask her to look for his work badge, and that she called Tarrant at 7:03 to tell him that C.F. had fallen in the bathtub. Turner obtained records from Dow showing that Tarrant had signed in around 6:55.

Haley Deem recounted Miller's explanation to her of the incident on the day that it occurred. According to Miller's account that day, she put C.F. in the shower, started making coffee, heard a thud, and discovered that C.F. had fallen. Deem also recalled that Miller initially claimed that she put the soiled sheets in the washer, despite having allegedly moved the washer and dryer to the new house the evening before.

After Miller testified in her defense, the State called into question several aspects of her story on cross-examination. Miller had testified on direct examination that C.F. had been sleeping on the couch when he soiled himself, but the State impeached her with her own testimony before the grand jury that he had slept in her bed the night before. The State noted the discrepancy in her testimony to Haley Deem about the sheets and the washer. The State also questioned Miller about a phone call she had made to Tarrant at 6:40. Miller claimed that she had called Tarrant to comment on the size of the stool she had found in C.F.'s pants after putting C.F. in the shower just prior to 6:40. The State observed that

according to all of her prior accounts, she put C.F. in the shower after Tarrant called about his work badge at 6:52, and that she had only been gone for a moment before she heard C.F. fall.

In its closing argument, the State asserted that Miller's story was a fabrication, citing these inconsistencies, Miller's text messages to Aimee Mitchell, and the testimony of the medical experts that C.F.'s injury wasn't caused by a fall. The jury found Miller guilty and assessed punishment at 99 years' imprisonment.

## DISCUSSION

### I. Legal Sufficiency

Miller alleges that the evidence is insufficient to support a jury verdict on the fifth paragraph of the indictment, which alleged that Miller injured C.F. by failing to seek or provide timely medical care. She does not challenge on appeal the sufficiency of the evidence to support the jury's verdict on the first four paragraphs of the indictment—that Miller "intentionally or knowingly cause[d] serious bodily injury to [C.F.]" by (1) causing his head to strike an unknown object, (2) causing an unknown object to strike his head, (3) shaking him, or (4) causing trauma to his head "by manner and means unknown." The Code of Criminal Procedure requires that all verdicts be general, prohibiting special verdicts requesting jury findings on matters other than the defendant's guilt or innocence. TEX. CODE CRIM. PROC. ANN. § 37.07 (West Supp. 2014). Consistent with this mandate, the trial court

charged the jury on the alternative theories of guilt listed in the indictment, and the jury returned a guilty verdict without pronouncing on the means by which Miller injured C.F. When, as here, a jury is charged with several alternative theories of guilt, and the evidence is sufficient to support a finding of guilt under any of the charged theories, the evidence is sufficient to support a guilty verdict. *Herrin v. State*, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002); *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997); *Russo v. State*, 228 S.W.3d 779, 795 (Tex. App.—Austin 2007, pet. ref'd). Because Miller does not challenge the sufficiency of the evidence to support the jury's verdict on the first four paragraphs of the indictment, we hold that legally sufficient evidence supports the verdict.

Miller posits that any failure to obtain medical care for an injury is a separate crime from the injury itself. She acknowledges, however, that injury to a child is a "result of conduct" crime. *See Stuhler v. State*, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007). The gravamen of the crime committed against C.F. is that he suffered severe head trauma that resulted in his death. The indictment alleged that C.F.'s injuries were caused by acts of omission, commission, or both. As we discuss further in Miller's next issue on appeal, whether acts of commission or omission caused C.F.'s injuries, they are alternative means, not different crimes. *See Stuhler*, 218 S.W.3d at 718 (observing that the crime of injury to a child is defined in terms of the injury itself, not the conduct that caused it); *Jefferson v.*

*State*, 189 S.W.3d 305, 312, 314 (Tex. Crim. App. 2006) (act of striking a child and failure to seek medical help are alternate means of committing crime of injury to a child, not separate crimes).

## II.     Jury Unanimity

Miller next contends that the trial court erred by not instructing the jury that it was required to reach unanimous agreement as to the means by which she injured C.F.  Specifically, she contends that failure to seek medical care is distinct from the other conduct alleged in the indictment and that the Texas Constitution requires unanimous agreement that she did one or the other for her to be convicted of either.  TEX. CONST. art. V, § 13; *Stuhler*, 218 S.W.3d at 716.

## A.     Standard of Review

In determining whether there is reversible error in the jury charge, we first decide whether error exists, and if error exists, we determine whether the defendant was harmed.  *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994).  Jury charge error to which the defendant did not object is not harmful and does not require reversal unless the error is so egregious that the defendant is denied a fair and impartial trial.  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  Here, Miller concedes that she did not object to the jury charge at trial, and thus, if the charge was erroneous, we must apply the egregious harm standard.  *See id.*

The degree of harm must be evaluated in light of the entire record. *See id.* Under the egregious harm standard, we review alleged charge error by considering (1) the entirety of the charge itself, (2) the evidence, (3) the arguments of counsel, and (4) other relevant information revealed by the record. *See Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006); *Almanza*, 686 S.W.2d at 171.

**B.    Analysis**

The Texas Constitution and the Code of Criminal Procedure require a unanimous jury verdict in all felony cases. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29 (West 2006). Unanimity requires that every juror agree that the defendant committed the same specific criminal act. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). The jurors need not, however, agree on the particular manner and means by which the defendant committed the criminal act. *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011). As noted above, injury to a child is a "result of conduct" offense, which is defined by the result of a defendant's conduct, not the manner or means of committing the injury. *Stuhler*, 218 S.W.3d at 718. As pleaded by the State, the issue in this case is whether Miller's conduct caused serious bodily injury to C.F. *See id.* at 717–18 (predicating guilt of defendant in injury to a child case on whether her conduct caused serious bodily injury or serious mental deficiency, impairment or injury).

9

Miller contends that any injury C.F. suffered because of her alleged failure to timely seek medical care resulted from a completely different incident from the conduct which first caused C.F. to be injured. She claims that she was egregiously harmed because some jurors may not have been persuaded of her guilt under paragraphs one through four while others could have rejected any conclusion that she injured C.F. by failing to obtain medical care. Miller correctly observes that the State suggested that she may have delayed seeking help to cover up the crime. In its final argument, the State emphasized that unanimity on the injury's cause was not required, and that the jury need not be convinced that Miller herself struck C.F. to find her guilty.

In *Jefferson v. State*, the Court of Criminal Appeals, faced with similar facts, held that a unanimity instruction was not required. 189 S.W.3d 305, 314 (Tex. Crim. App. 2006). The defendant in *Jefferson* was accused of striking his daughter, causing her to fall and suffer a fatal head injury. *Id.* at 306–07. The State prosecuted the defendant for injury to a child. *Id.* at 306. As in the present case, the State did not commit to proving that the defendant hit the victim, arguing instead that whether the defendant or his wife dealt the fatal blow, the defendant chose to hide the crime by delaying medical care. *Id.* at 307. Jefferson contended on appeal that the trial court should have given a unanimity instruction. *Id.* at 309–10. The Court of Criminal Appeals rejected this argument. *Id.* at 306. The court

premised its analysis on whether, per the language of the statute, causing injury by act or by omission were distinct elements or simply different means by which the same offense could be committed. *Id.* at 312 (citing *Richardson v. United States*, 526 U.S. 813, 817–18, 119 S. Ct. 1707, 1710 (1999)). Noting that the language of the statute criminalized any "act or omission" that caused bodily injury to a child, the court held that acts of commission and omission constituted alternative means of committing the same offense, not separate offenses. *Id.* at 312–13. The court further determined that dispensing with the unanimity requirement did not violate due process, and thus that the instruction was not required. *Id.* at 313–14 (citing *Schad v. Arizona*, 501 U.S. 624, 649–52, 111 S. Ct. 2491, 2506–07 (1991) (Scalia, J., concurring in part and concurring in the judgment)). Because Miller's charge issue is indistinguishable from the complaint addressed in *Jefferson*, we hold that the trial court did not err by failing to give a unanimity instruction. *See Jefferson*, 189 S.W.3d at 306.

## III. Sidebar Remarks

Lastly, Miller complains that the trial court erred in overruling her objection to the State's sidebar remarks made during cross-examination. Sidebar remarks are remarks of counsel that are neither questions to the witness nor comments addressed to the court. *Jimenez v. State*, 240 S.W.3d 384, 404 (Tex. App.—Austin 2007, pet. ref'd); *Brokenberry v. State*, 853 S.W.2d 145, 152 (Tex. App.—Houston

11

[14th Dist.] 1993, pet. ref'd). To obtain reversal of a judgment on the basis of an improper sidebar remark, the defendant must show that the remark interfered with her right to a fair trial. *Brokenberry*, 853 S.W.3d at 152; *see also Jimenez*, 240 S.W.3d at 406. The prosecutor made the challenged remarks when cross-examining Miller on a discrepancy between her testimony and her statement to an investigator regarding whether she and Tarrant drank alcohol the night before C.F. was injured.

Q. So, why is there a difference in your testimony again?

A. At the time we were together, I didn't – I didn't – for the same reason why I dropped the charges. It was because of the whole situation.

Q. So, you were lying to protect him. Is that what you were saying?

A. I just didn't tell her.

Q. You didn't tell her what? The truth?

A. That he was – that he drank, yes. That – just because I didn't tell her doesn't mean I was lying to her.

Q. Yes, it does.

A. Well, I mean –

Q. **I mean, you just literally have totally contradicted yourself.**

[Counsel for Miller] Objection, argumentative, Your Honor.
[The Court] Overruled.

These remarks were not questions directed at the witness, nor were they comments addressed to the court. As such, they were improper, and the trial court erred by overruling Miller's objection. *Jimenez*, 240 S.W.3d at 404; *Brokenberry*, 853 S.W.2d at 152. We thus consider whether the remarks were harmful error. A sidebar remark is harmful error if it interfered with the defendant's right to a fair trial. *Brokenberry*, 853 S.W.2d at 152.

We conclude that the sidebar remark did not result in an improper verdict. First, Miller admitted that she did not tell investigators that Tarrant had been drinking the night before the injuries occurred. Second, whether drinking occurred was ancillary to the contested issue that the jury was to decide: whether Miller caused C.F.'s injuries. Neither she nor the State adduced evidence or argued to the jury that C.F.'s injuries had occurred the night before or that she or Tarrant were impaired by alcohol on the morning in question. The State's strategy in its case against Miller was to discredit her account of C.F.'s injury, both through medical expert testimony that the injuries were the result of violence and through discrepancies between Miller's statements to investigators and her statements at trial. In light of the evidence that C.F.'s injury was not caused by a fall in the tub, we hold that the trial court's error in failing to sustain the objection was harmless.

13

# CONCLUSION

We affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Do not publish. *See* TEX. R. APP. P. 47.2(b).