COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ERIC ABRAHAM MORENO, | § | No. 08-18-00099-CR |
| Appellant, | § | Appeal from the |
| v. | § | 384th District Court |
| THE STATE OF TEXAS | § | of El Paso County, Texas |
| Appellee. | § | (TC#2018D00061) |

## **O P I N I O N**

Eric Abraham Moreno was convicted of two counts of family violence assault, *see* TEX.PENAL CODE ANN. § 22.01(a)(1), and one count of continuous violence against the family. *See* TEX.PENAL CODE ANN. § 25.11. Each count for family violence assault was enhanced from a Class A misdemeanor to a third-degree felony by an allegation that Moreno had been previously convicted of a family violence assault. *See* TEX.PENAL CODE ANN. § 22.01(b)(2). At punishment, each conviction for family violence assault was further enhanced from a third-degree felony to a second-degree felony by an allegation that Moreno had been previously convicted for burglary of habitation. *See* TEX.PENAL CODE ANN. § 12.42(a). After finding the enhancement paragraph "true," the jury sentenced Moreno to three concurrent sentences of confinement: thirteen years for the continuous violence against the family offense (Count I), twenty years for enhanced felony family violence assault (Count III), and five years for the second felony family violence assault

(Count IV). The jury also assessed fines in the amounts of $2,500.00, $9,000.00, and $500.00 respectively. Moreno was also acquitted of one count of family violence assault (Count II).

In four issues, Moreno contends: (1) egregious harm resulted from the omission of a unanimity jury charge instruction during the guilt phase of trial; (2) egregious harm resulted from the inclusion of a jury charge instruction during the punishment phase of trial informing the jury Moreno pled "true" to the enhancement paragraph and the evidence of the prior conviction that was the subject of the enhancement varied from the indictment; (3) he received ineffective assistance of counsel during the guilt phase of trial because his attorney failed to object to admission of evidence of Moreno's prior convictions; and (4) the constitutional prohibition against double jeopardy was violated because he was punished multiple times for the same offense. The State concedes the fourth issue and agrees that the conviction and sentence for continuous violence against the family (Count I) should be set aside. We therefore limit our review to only Moreno's first three issues.

## FACTUAL BACKGROUND

A four-count indictment alleged Moreno committed family violence assaults on December 15, 2016, March 6, 2017, and March 9, 2017 against his girlfriend, M.G. ("the victim") with whom he resided. At the guilt innocence phase of trial, contrary to his attorney's advice, Moreno testified in his own defense.

### A. Moreno's Testimony

According to Moreno, on December 15, 2016, while driving his truck home from a bar, the victim, who was seated on the passenger side, attempted to take the keys from the vehicle's ignition. In response, Moreno stopped the truck, removed the keys from the ignition, and threw

them at her, but they did not hit her. Moreno said he did not otherwise strike her. Moreno was eventually arrested for both DWI and assault. Moreno resumed living with the victim after he was released on bond for these offenses.

Moreno also testified that on March 6, 2017, he and the victim argued. During the argument, Moreno admitted he pushed the victim which caused her to trip and hit her head on the bed frame. Moreno testified, however, he only intended to make her fall on the bed. Moreno also testified that the victim's head hit the bed frame with such severity he believed she was going to die from the head injury. Despite the seriousness of the injury, Moreno did not take the victim to the hospital or obtain medical assistance on the victim's behalf. Moreno claimed he attempted to call 911, but when he did so, his cell phone died. Moreno also testified he attempted to charge his phone in another room, but when he did so, the victim ran from the bedroom, reached for the phone, and after Moreno pushed her, she tripped a second time, this time on a stair step, which caused her to "fly" into the air and fall onto a ceramic tile floor. Moreno said she got up and attempted to take the phone from him. In response, Moreno said he threw the phone under the sofa, and "[t]hat's when—when I moved her hand, that's where it hit her, on the side of the [Speaking Spanish]."

He said he did not take her to the hospital that evening because he was "too tired and [he] fell asleep. . . and [he] had been drinking." Moreno testified the next day the victim did not want to go to the hospital. According to Moreno she wanted to go to work with him and wait for him in the bed of his truck. Moreno testified the victim accompanied him to work every day after that.

Moreno also testified that in the evening of March 9, 2017, the victim consumed "blue beer" which caused her to become "hysterical" and "wanting to fight." Moreno said he called 911.

3

Before speaking with the 911 operator, however, he said he ended the call. The 911 call was recorded and admitted into evidence. The victim was recorded saying "Stop it, Eric." Moreno also made a statement captured on the 911 recording. He claimed he said "[h]ey, they're going to think I kicked your ass."[1] After the caller failed to directly communicate with the 911 operator, the operator called back and Moreno answered. The operator asked for Moreno's name, which he gave. Afterward, Moreno claimed he and the victim fell asleep on the couch at their residence after having sex and that he was later awakened by the sound of "walkie-talkies" coming from outside the residence. When Moreno approached the residence door, which was open, he said he heard the words "El Paso PD" but then closed the door. He said he walked over to the victim, who was still asleep on the couch, and woke her by "patt[ing] her on the shoulder" and led her to the bedroom where they laid down together on a mattress on the floor. After the police "knocked down the door" and made contact with both Moreno and the victim, Moreno was arrested for family violence assault.

On cross-examination, Moreno claimed that on December 15, 2016 he "tossed" the keys toward the truck door. He admitted he was intoxicated at the time he was driving which is why "[he] got a DWI" of which he was "guilty." He admitted if he had not pushed the victim, she would not have hit her head on the bed post. Moreno could not explain why, after his phone died and he was unable to reach his phone under the couch, he did not seek assistance from a neighbor, who may have obtained medical attention for the victim. Moreno admitted to consuming beer on March 9. Moreno admitted to closing the door after police arrived at the residence and ignoring the police officer's commands to open the door.

---

[1] During closing arguments, the prosecutor argued Moreno's statement captured on the 911 call was actually "I'll f---ing kick your ass."

The prosecutor also asked Moreno about his prior convictions, which consisted of the following: (1) 1992 burglary of a habitation; (2) 1995 DWI; (3) 2004 evading arrest; (4) 2006 failure to identify; (5) 2007 family violence assault; (6) 2007 family violence assault; (7) 2008 family violence assault; (8) 2010 family violence assault; (9) 2012 family violence assault; and (10) 2013 theft. Moreno said his previous five convictions for family violence assault all involved the same previous girlfriend, whom he claimed he had "never" beaten.

## B. Police Testimony

On December 15, 2016, El Paso Police Officers Wilbur Castillo and Pedro Guillen were patrolling the area in their patrol car when they saw Moreno's truck stopped in the middle of the road and proceeded to investigate the situation. As they approached the truck from behind, Castillo saw Moreno make a motion toward the victim, while Guillen saw Moreno strike the victim's face with his right hand. At trial, the State entered into evidence the video captured by the officer's dashboard camera, which Officer Guillen testified depicted the strike to the victim's face, but the record reflects the alleged strike was difficult to see in the video footage. After making contact with both Moreno and the victim, the police officers arrested Moreno, who was charged with DWI and assault.

On March 9, 2017, according to El Paso Police Officer Suzanne Saldana, after being dispatched to the couple's residence for a family violence assault call, she and her partner arrived at the couple's residence and found the front door open. Before announcing their presence, the door was slammed shut. Saldana peered inside the residence through a window and saw Moreno, who was sitting on the couch with the victim, strike the victim's arm with his forearm, and "forcefully grab" the victim and "pull her" into another room that was not visible to the officers.

After Saldana observed what she believed to be an assault and after the occupants failed to comply with the officers' commands to open the door, the officers forcibly entered the residence. Upon making contact with the victim, Saldana observed multiple injuries on the victim's head and body, which Saldana described as "a large-sized bump—it's purple in color—on the right side of her forehead" as well as bruising on her cheek and chin, redness on her left cheek, a bruise on her lower back, a bruise on her left knee, her ankle was bruised and swollen, and a bruise and redness were located on her left arm. Saldana described the victim's demeanor at the time as "afraid; she was crying, she was distraught" and while the victim did not appear to be intoxicated, Moreno was "very intoxicated." Saldana said photographs were taken of the victim's injuries, fifteen of which were entered into evidence at trial Saldana also testified that at the time the photographs were taken, the victim explained how she received her injuries in a recorded video statement. Moreno was arrested and charged with family violence assault.

**C. The Victim's Testimony**

At trial, the victim was a reluctant State's witness. On direct examination, the victim testified that on December 15, 2016, she told police officers that Moreno hit her on the face with his hand. The victim also testified on direct examination that on March 6, 2017, during an argument, Moreno pushed her and caused her to trip on a mattress and hit her head on the bed frame. She also testified that during the same argument, she followed Moreno into the living room where she slipped and fell.

When asked at trial how she sustained the black eye depicted in the photographs taken on March 9, 2017, she initially claimed it was caused when she hit the bed frame on March 6, 2017. When the prosecutor reminded her that she told Saldana something different about how she

sustained the injuries depicted in the photographs, she claimed she could not remember what she told Saldana. Outside the jury's presence, the prosecutor refreshed her recollection with her video statement. After her recollection was refreshed, the victim testified in front of the jury the bodily injuries she sustained "throughout [her] entire body" on March 6, 2017, including the injuries to her forehead, the black eye, the injuries to her knees, ankle, chin, face, arms, legs, and lower back, as depicted in the photographs caused her pain and that they were inflicted by Moreno, Finally, the victim testified that the bodily injury she sustained on March 9, 2017 to her arm caused her pain and it was inflicted by Moreno.

On cross-examination, however, the victim testified that Moreno did not hit her on December 15, 2016. She testified she could not remember exactly what happened inside the truck but she thought when Moreno threw the keys in her direction they may have grazed her. The victim agreed with defense counsel that the "worst injuries" were the injuries to her face, which included the "welt to [her] forehead" which was caused on March 6, 2017, when Moreno pushed her and caused her to hit the "side of the bed." Defense counsel also elicited testimony from the victim establishing she believed Moreno "didn't want to do that."

The jury found Moreno guilty of two counts of family violence assault alleged to have occurred on March 6, 2017 and March 9, 2017, and acquitted Moreno of the family violence assault alleged to have occurred on December 15, 2016. The jury also found Moreno guilty of the continuous violence against the family which was based on the assaults that occurred on March 6, 2017 and December 15, 2016.

**DISCUSSION**

I.    **Unobjected-to Jury Charge Error**

7

In his first issue, Appellant argues a specific unanimity instruction was required with respect to Count III, which alleged Moreno had, on March 6, 2017, intentionally, knowingly, or recklessly caused bodily injury to the victim by either: (1) striking the victim's face or head; (2) pushing the victim and causing her to strike the floor; (3) or pushing the victim and causing her to strike the bed post. Appellant contends that the trial court erred by failing to instruct the jury "it [could not] return a guilty verdict unless it unanimously agree[d] upon the commission of any one of these criminal acts."

## A.      Standard of Review

Appellant admits he failed to object to the absence of the suggested instruction in the jury charge at trial and he therefore failed to preserve any alleged error for review. Under such circumstances, our first duty is to decide whether jury-charge error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). And if we find error, we can only *reverse* on the basis of unobjected-to charge error if the Appellant shows "egregious harm" resulted from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App. 2004). Egregious harm resulting from unobjected-to charge error exists if the error "affect[s] the very basis of the case, deprive[s] the defendant of a valuable right, vitally affect[s] the defensive theory, or make[s] a case for conviction clearly and significantly more persuasive," and thereby effectively denies the accused a fair and impartial trial. *Taylor v. State*, 332 S.W.3d 483, 490 (Tex.Crim.App. 2011).

## B.      Single vs. Multiple Crimes

Appellant argues, more specifically, that because the victim sustained two bodily injuries, one to her head and another to her chin during the March 6 incident, and each injury was alleged

8

to be caused by different discrete acts committed by the defendant, each act and accompanying injury constituted different offenses, and each offense required a unanimous verdict. Consequently, according to Appellant, the jury was required to unanimously agree *how* Moreno caused the bodily injury as alleged in Count III.

The relevant abstract portion of the jury charge instructed the jury on family violence assault as follows: "A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. In the charge's application section, Count III was submitted as a single offense occurring on a single day against a single victim, with three manner and means paragraphs listed in the disjunctive as follows:

> Now, if you find that on or about the 6th day of March, 2017 . . . Eric Moreno, did intentionally or knowingly or recklessly *cause bodily injury* to [victim]. . .
>
> By striking [victim] about the face or head with the defendant's hand
>
> Or
>
> By pushing [victim] about the body with the defendant's hand, causing [victim] to strike the floor,
>
> Or
>
> By pushing [victim] about the body onto a bed with the defendant's hand, causing [victim's] face or head to strike the bed post,
>
> . . . then you will find the defendant Guilty of Count III . . . . [Emphasis added].

Appellant relies on *Ngo v. State*, 175 S.W.3d 738 (Tex.Crim.App. 2005) to support his contention that the manner and means paragraphs were actually separate offenses alleged in a single count. However, *Ngo* is distinguishable. In *Ngo*, the defendant was convicted of credit card abuse, not assault, and unlike here, the State's indictment tracked the statutory language defining different types of credit card abuse offenses committed on different days within a single count. *See*

9

*Ngo*, 175 S.W.3d at 744 ("The indictment charging [Ngo] with credit card abuse under section 32.31 of the Penal Code alleged three statutorily different criminal acts: 1) *stealing* a credit card . . . ; 2) *receiving* a credit card . . . knowing that it had been stolen, and acting with the intent to use it; 3) *presenting* a credit card with intent to obtain a benefit fraudulently, knowing the use was without the effective consent . . . .)[Emphasis added]; *see also* TEX.PENAL CODE ANN. § 32.31(b)(setting forth elements of different criminal offenses for stealing, receiving, and presenting stolen credit card). Here, however, Count III of the indictment alleged only that Moreno *caused bodily injury*. While the State produced evidence establishing Moreno committed the single criminal offense in different ways, such manner and means evidence does not establish multiple offenses. *See Young v. State*, 341 S.W.3d 417, 422 (Tex.Crim.App. 2011)("the jury must unanimously agree about the *occurrence of a single criminal offense*, but they need not be unanimous about the specific manner and means of how that offense was committed.")[Emphasis added].

Moreover, the gravamen of the statutory offense alleged in Count III (assault) is not the *means* by which it was committed (pushing or striking) but the *result* produced (bodily injury) by such conduct. In *Young v. State*, the Texas Court of Criminal Appeals distinguished "result of conduct" offenses, such as murder, from "nature of conduct" offenses, such as credit card abuse. *See Young*, 341 S.W.3d at 423-24 ("murder is a 'result of conduct' offense because it punishes the intentional killing of another regardless of the specific manner (e.g. shooting, stabbing, suffocating) of causing the person's death . . . [with] 'nature of conduct' offenses, it is the act or conduct that is punished, regardless of any result that might occur").

In the case of result-of-conduct offenses, as long as each manner and means by which the

result (bodily injury) is produced is "basically morally and conceptually equivalent," due process does not require jury unanimity with respect to which act was committed by the defendant. *See Jefferson v. State*, 189 S.W.3d 305, 313-14 (Tex.Crim.App. 2006)(holding injury to a child is a result of conduct offense and "act or omission" comprising the course of conduct statutory element does not require jury unanimity in part because it would be "'absurd' to set appellant free because, for example, six jurors may have believed that he struck the fatal blow to the child while six other jurors may have believed that he failed to pick up the phone and call 9-1-1 to seek medical help for a child who was obviously very seriously injured and in great distress.")(relying on Scalia, J. concurrence in *Schad v. Arizona*, 501 U.S. 624, 650 (1991)).

Here, the applicable assault statute seeks to punish the result of conduct: "A person commits an offense if the person: intentionally, knowingly, or recklessly *causes bodily injury to another*, including the person's spouse." [Emphasis added]. TEX.PENAL CODE ANN. § 22.01(a)(1). Because the applicable statute in this case is result oriented and does not expressly identify a manner and means that is prohibited, which is to say, it does not make "striking" or "pushing" in and of themselves elements of the crime, the jury was not required to unanimously agree which of the acts as alleged in the indictment caused the victim's bodily injury. It only had to unanimously agree that on March 6, 2017, Moreno *caused bodily injury* to the victim with the requisite intent. Consequently, even if six jurors may have believed Moreno intentionally, knowingly, or recklessly pushed the victim and caused her head to hit the bed post, while the other six jurors believed he struck her and caused injury to her chin, all twelve determined Moreno "caused bodily injury" during the altercation.

Appellant also relies on federal and state constitutional provisions and cases requiring that

a jury find that the State has proven each *element of the offense* beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970)("we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); TEX.CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."); TEX.CONST. art. V, § 13 (permitting less than unanimous verdict in civil cases only, unless "one or more jurors not exceeding three, may die, or be disabled from sitting;" and TEX.PENAL CODE ANN. § 2.01 ("no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt").

We have previously held that the manner and means by which a defendant causes the bodily injury alleged by the State in an assault case is *not* an essential element of the offense. *Davila v. State*, 346 S.W.3d 587, 590-91 (Tex.App.--El Paso 2009, no pet.). While the State may be required to allege the manner and means so that the defendant is given notice of the facts on which the State will rely to prove the element of *bodily injury*, it is not itself an element of the offense for which a unanimous jury finding is required. Because the jury was instructed that a unanimous decision was required and that the State must prove each *element* of the offense beyond a reasonable doubt, including the element of bodily injury, we find no error in the jury charge as submitted. Accordingly, a harm analysis is unnecessary. We overrule Moreno's first issue.

C.    **Jury Charge at Punishment Phase**

In his second issue, Appellant argues the jury charge instruction informing the jury he pleaded "true" to the felony enhancement paragraph during the punishment phase was erroneous

12

because he was denied the opportunity to enter a plea in front of the jury. He also argues the enhancement paragraph alleged a felony cause number (920D07615) that differed from the felony cause number (67178) on the judgment used to prove the allegation. Once again, no objection was lodged at trial to preserve either alleged error.

Without deciding whether there was charge error during the punishment phase, we find Moreno cannot show egregious harm resulted from the alleged errors. The enhancement paragraph alleged Moreno had been once previously convicted of a felony burglary of habitation. During the punishment phase, Moreno did not argue he was *not* previously convicted of the burglary of habitation offense. Nor does he assert in this appeal that he would have pleaded "not true" to the enhancement paragraph if given the opportunity. Indeed, the record supports a determination that he would not. While testifying during the guilt/innocence portion of trial, Moreno admitted to pleading guilty to the burglary of habitation and that his probation in that case was subsequently revoked and he went to prison. And, during the punishment phase, Moreno's trial counsel attempted to exclude the testimony of the State's fingerprint witness on the basis that it was irrelevant because "we've already been through that" and "[t]here's not any question" about whether Moreno is the same person who was convicted of burglary of habitation.

In addition, during the punishment phase, the State submitted certified copies of the 1992 judgment on plea of guilty for the burglary of habitation, the related terms and conditions of probation, and the 2000 judgment revoking probation. Testimony from a fingerprint expert establishing that Moreno was the same person who was convicted of the burglary of habitation offense was also admitted into evidence. There is simply no doubt that the evidence was sufficient to prove beyond a reasonable doubt that Moreno was previously convicted of the burglary of

habitation that was alleged in the enhancement and admitted into evidence and that Moreno had notice of which conviction the State was relying on to prove the enhancement.

In light of this evidence, we find any alleged unobjected-to charge error in the punishment phase was harmless. And to the extent any variance exists in the cause numbers between the enhancement allegation and proof, we find the discrepancy was immaterial and that any error related thereto was waived and/or harmless. *See Gollihar v. State*, 46 S.W.3d 243, 258 (Tex.Crim.App. 2001)(holding that nonmaterial variance between indictment and proof is not fatal to judgment). We overrule Moreno's second issue.

## II.     Ineffective Assistance of Counsel

In his third issue, Appellant argues he received ineffective assistance of counsel during the guilt phase of trial because his attorney failed to object to the State's reference to Moreno's previous criminal convictions which he claims were inadmissible under Rule 609 of the Texas Rules of Evidence. The record reflects the prosecutor elicited testimony from Moreno on cross-examination about the following convictions: (1) 1992 burglary of a habitation; (2) 1995 DWI; (3) 2004 misdemeanor evading arrest; (4) 2006 misdemeanor failure to identify; (5) 2007 misdemeanor family violence assault;[2] (6) 2008 misdemeanor family violence assault; (7) 2010 misdemeanor family violence assault; (8) 2012 misdemeanor family violence assault; and (9) 2013 theft. The judgments for these prior convictions were also entered into evidence during the guilt phase. Moreno asserts only two convictions were "clearly admissible:" the 2010 family violence assault (alleged in the indictment for jurisdictional purposes) and the 2013 theft. But he contends *none* of the other convictions were admissible for any purpose, including impeachment.

---

[2] This conviction was referenced twice during the prosecutor's cross-examination of Moreno.

14

To prevail on an ineffective-assistance-of-counsel claim, a defendant must show *both* that (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). The deficiency prong requires a showing that an attorney made errors so serious that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687. When reviewing counsel's performance, we "must be highly deferential" to trial counsel's decisions and choices, and make "every effort be made to eliminate the distorting effects of hindsight." *Thompson,* 9 S.W.3d at 813; *Strickland*, 466 U.S. at 689. We must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689.

The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. Thus,"[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside a judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When assessing whether the defendant met his burden to show prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 694. "Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the

15

reliability of the result of the proceeding." [Citations omitted]. *Id.* Rather, the question is whether the defendant has shown that the "decision reached [by the jury] would reasonably likely have been different absent the errors." *Id*. at 696.

Here, because the record is silent about trial counsel's strategy or reasons for failing to object, we do not address the deficiency prong of Moreno's ineffectiveness claim. However, we do find that Moreno fails to demonstrate he was prejudiced by counsel's alleged deficiency for two reasons. First, we agree with the State that all five prior convictions for misdemeanor family violence assault were admissible for purposes of disproving Moreno's defensive theory, raised on direct examination, that the victim's injuries were accidentally inflicted.[3] *See* TEX.R.EVID. 404(b)(2)(Evidence of a crime "may be admissible for another purpose, such as proving . . . intent . . . or lack of accident."). Moreno testified on direct examination that he pushed the victim twice. After the first push, Moreno claimed the victim tripped and hit her head on the bed and after the second push, she fell on the ceramic tile floor. He also testified that while the victim was reaching for his phone, he moved her hand and "it" hit her. In effect, Moreno claimed that each of these injuries was inflicted accidentally and that it was not his intent to injure the victim. Accordingly, the element of intent was contested.

Moreno's previous family violence assault convictions were therefore highly relevant to the issue of intent and lack of accident. *See Cantrell v. State*, 731 S.W.2d 84, 90 (Tex.Crim.App. 1987)("[W]here the material issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extraneous offense derives purely from the point of view of the

---

3 While the State argues the assault convictions were admissible under TEX.R.EVID. 609 and *Theus v. State*, 845 S.W.2d 874 (Tex.Crim.App.1993), we find they were admissible under TEX.R.EVID. 404(b) which renders the *Theus* balancing analysis unnecessary.

doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all."). [Internal quotation marks omitted]. Accordingly, the State was permitted to use these convictions to disprove Moreno's claim of accident and lack of intent. TEX.R.EVID. 404(b)(2). Moreover, the State provided Moreno with reasonable notice of its intent to use these convictions "during every phase of the trial of this case, in every allowable way," as required by the Rule, which, the record reflects, is one reason counsel advised Moreno not to testify in the first place.

Second, despite admission of the other convictions during guilt phase, which arguably could have been excluded under Rule 609 and were not relevant, the jury still *acquitted* Moreno of one count of family violence assault. This means, in our view, given the remoteness of the commission of the 1992 burglary of habitation, and the less serious nature of the older convictions including the misdemeanor convictions for DWI, evading arrest, and failure to identify, the jury was not so prejudiced so as to disregard all exculpatory evidence. Accordingly, we hold admission of these remaining convictions was not so prejudicial as to undermine our confidence in the outcome. This is especially true in light of the admissions Moreno made on the witness stand and his statements regarding other incriminating acts committed on March 6 and the days after, including his failure to seek medical attention for the victim, which the jury could have concluded was due to Moreno's desire to conceal the injuries he inflicted and to prevent the victim from going to the authorities, as well as other evidence directly contradicting his version of events, such as Saldana's testimony. Accordingly, we overrule Moreno's third issue.

## III. Double Jeopardy Violation

The State concedes that two (Counts I and III) of Moreno's three convictions are in violation of his constitutional double-jeopardy protections against multiple punishments for the same offense because the allegations in Count I relied on the same acts for which Moreno was convicted in Count III. "When a defendant is convicted of two offenses and those convictions violate double-jeopardy protections, the conviction for the more serious offense is retained, and the other conviction is set aside." *Ex Parte Denton*, 399 S.W.3d 540, 547 (Tex.Crim.App. 2013). "The most serious offense is the offense of conviction for which the greatest sentence was assessed." *Id.* Moreno's conviction for family violence assault in Count III for which he received a prison sentence of twenty years is the more serious offense because he received a lesser sentence for the continuous violence against the family conviction (Count I). We therefore retain the family violence assault conviction (Count III) and set aside the continuous violence against the family conviction (Count I).

## CONCLUSION

Having overruled Moreno's first three issues, we affirm the trial court's judgments and sentences as to Counts III and IV for felony family violence assault, but we sustain Moreno's fourth issue and hereby set aside only the conviction and sentence for continuous violence against the family (Count I).

December 22, 2020

                                    YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)