

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0853-19

**ROBERT HERRON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

SLAUGHTER, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, YEARY, NEWELL, KEEL, WALKER, and MCCLURE, JJ., joined. KELLER, P.J., concurred.

## **O P I N I O N**

Appellant Robert Herron, a sex offender, was released on parole after signing pre-release paperwork reflecting that upon release he would reside in a halfway house in El Paso County. The pre-release paperwork also indicated that Appellant should register as a sex offender with the Horizon City Police Department upon establishing his residence at the halfway house. But instead of going to El Paso County, Appellant absconded to another county where he was apprehended a

few weeks later. Appellant was subsequently charged with and convicted of failure to register as a sex offender in El Paso. The question we must resolve is, can Appellant be convicted of that offense when the uncontested evidence showed that Appellant never went to El Paso following his release? The answer is no. The evidence failed to establish that Appellant resided or intended to reside in El Paso County for more than seven days. Therefore, pursuant to Code of Criminal Procedure Article 62.051(a),[1] Appellant was not statutorily obligated to register as a sex offender in El Paso as alleged in the indictment. Accordingly, as a matter of law, he cannot be guilty of the failure-to-register offense as alleged. We affirm the judgment of the court of appeals holding the evidence insufficient to support Appellant's conviction and rendering a judgment of acquittal.

## I.     Background

Appellant has a prior conviction for a sexual offense and is required to register as a sex offender.[2] In June 2016, Appellant was in custody at a Texas Department of Criminal Justice (TDCJ) Intermediate Sanctions Facility (ISF)[3] in Brownfield because of a parole violation.[4]

---

[1] *See* TEX. CODE CRIM. PROC. art. 62.051(a) ("A person who has a reportable conviction . . . shall register . . . with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days. If the person does not reside or intend to reside in a municipality, the person shall register or verify registration in any county where the person resides or intends to reside for more than seven days. The person shall satisfy the requirements of this subsection not later than the later of: (1) the seventh day after the person's arrival in the municipality or county; or (2) the first date the local law enforcement authority of the municipality or county by policy allows the person to register or verify registration, as applicable.").

[2] *See* TEX. CODE CRIM. PROC. arts. 62.001(5) (defining reportable conviction); 62.051(a) (setting forth general registration obligations).

[3] Witness Laura Spink, an official with TDCJ's parole division, testified that ISF "is a lockdown facility for parole violators. They're sent there anywhere from three to six months as a sanction. Instead of getting revoked and sent back to prison, the [parole] board has the option of sending somebody to ISF as a sanction."

[4] The offense for which Appellant was on parole was not his reportable conviction for a sexual offense but was instead an unrelated drug offense.

Appellant was set to be re-released on parole after serving his sanction at ISF, and per the terms of his release, he was required to reside at a halfway house for a period of time. The halfway house was located within El Paso County, but it is unclear from the record whether it lies within an unincorporated area of El Paso County, within the El Paso city limits, or within the municipality of Horizon City.

Several days before being released from ISF, Appellant signed a statutorily-required form notifying him of his sex offender registration obligations.[5] The form lists the location where Appellant "expect[ed] to reside" upon his release as "1700 Horizon Blvd North, El Paso, Texas 79928," the address of the halfway house. On the next line, Appellant signed his initials next to the following fill-in-the-blank section of the form:

> Chapter 62, Code of Criminal Procedure, requires me to register as a sex offender. I understand that:
> Initial Verification of Registration upon Release: Not later than the 7th day after 6/27/2016 (date of release/placement on community supervision or juvenile probation), I must personally appear at the following local law enforcement authority to verify and complete my registration:
> Local Law Enforcement Agency Name: Horizon City Police Department
> Agency Address/City/State/Zip: 14999 Darrington Rd Unit 7, Horizon City, TX 79928.

Appellant also initialed a portion of the form which stated, "If I have a . . . parole officer and I do not move to an intended residence, I must report to my supervising [parole] officer not later than the 7th day after the date I was released." Below this, Appellant placed his initials next to several paragraphs addressing his general statutory registration obligations, including that he must register with the local law enforcement authority in any location where he "reside[s] or intend[s] to reside

---

[5] *See* TEX. CODE CRIM. PROC. art. 62.053 (setting forth notification requirements for individuals being released from custody who are required to register as sex offenders upon release). The form, which was admitted into evidence at Appellant's trial, bears the official seal of the Texas Department of Public Safety and is labeled, "Pre-Release Notification Form, Texas Sex Offender Registration Program, Article 62.053, Code of Criminal Procedure."

for more than seven days" within seven days of his arrival, and that he must inform his "primary registration authority" and parole officer before changing his address.[6] The form was signed at the bottom by both Appellant and a TDCJ official.

On June 27th, Appellant was transported by ISF personnel to a Greyhound bus station in Lubbock where he was scheduled to take a bus to El Paso. At the bus station, while the personnel were acquiring a bus ticket for him, Appellant absconded. Several weeks later, Appellant was apprehended in Aransas County and charged for the instant offense. In its indictment, the State alleged:

> [T]hat on or about 6th day of July, 2016 . . . in the County of El Paso and State of Texas, [Appellant] . . . while being a person required to register with the local law enforcement authority, to-wit: El Paso County Sheriff, in the county where the defendant resided or intended to reside for more than seven days, to-wit: El Paso, because of a reportable conviction for Aggravated Sexual Assault of a Child, intentionally or knowingly fail[ed] to register with the local law enforcement authority in said El Paso County

---

[6] Specifically, two of the paragraphs initialed by Appellant stated,

> **Registration**: I am required to register with the local law enforcement authority in any municipality (chief of police) where I reside or intend to reside for more than seven days. If my residence is not in a municipality, I must register with the local law enforcement authority of the county (sheriff) where I reside or intend to reside for more than seven days. Registration must be completed not later than the 7th day after the date of arrival in the municipality or county. The local law enforcement authority or the centralized registration authority, as designated by a commissioner's court, in the municipality or county I reside in will be my primary registration authority.

> **Change of Address**: Not later than the 7th day before I move to a new residence . . . I must report in person to my primary registration authority and to any community supervision and corrections department officer, juvenile probation officer, or parole officer supervising me and inform that authority and officer of my intended move. If my new residence is located in this state, not later than the 7th day after changing address, I must report in person and register with the local law enforcement authority in the municipality or county where my new residence is located. . . . If I do not move to an intended residence, not later than the 7th day after my anticipated move date, I shall report to my primary registration authority and to any supervising officer supervising me.

At Appellant's bench trial, the State presented the testimony of Laura Spink, a unit supervisor with the TDCJ Parole Division. Spink described the events leading up to Appellant's failure to appear at the halfway house, including his absconding at the bus station and his subsequent arrest. She confirmed that Appellant never appeared at the halfway house following his release from custody in June, nor did he notify anyone from the halfway house of any change of address or that he was residing outside of El Paso County. Spink also discussed the contents of the pre-release notification form that Appellant signed. She indicated that the form constitutes an acknowledgment by the individual of "where they're supposed to go" to register and "who they're supposed to report to." Asked to confirm where Appellant was supposed to register based on his expected address at the halfway house, Spink replied, "Here in El Paso, it's the El Paso County Sheriff's Office." Spink also referred to the halfway house as being "in Horizon City."

The State also presented the testimony of Eduardo Gutierrez, Jr., an El Paso County Sheriff's detective with the sex offender registration and tracking unit. Gutierrez testified that the pre-release notification is "the rules and stipulations that every sex offender within the state of Texas has to comply with under chapter 62." He opined that upon Appellant's release in June, "according to the documents," Appellant "ha[d] to report to the El Paso County Sheriff's Office or local law enforcement authority no later than seven days after he's released[.]" Gutierrez confirmed that Appellant never came to the Sheriff's Office to register following his release. When asked whether Appellant was required to report to the El Paso County Sheriff's Office even if he failed to go to his expected residence in El Paso (e.g., the halfway house) and instead went to another city, Gutierrez replied "yes" because "that's what it says on the [pre-release notification] form, that if he intends or does not intend to move to his address, he notifies us. He has to let us know. 'Us' [being] the sheriff's office and/or parole probation officer." Gutierrez also stated that Appellant was required to register with the Sheriff's Office as opposed to the El Paso Police

Department because the Sheriff's Office "has jurisdiction at the halfway houses in Horizon." Gutierrez acknowledged that he did not know where Appellant went after absconding from the bus station, but stated that as far as he knew, Appellant never went to El Paso. Gutierrez testified that to his knowledge, Appellant did not register in any other county after his release, but Gutierrez further acknowledged that he would not know if Appellant registered anywhere else after that point in time.

The State also introduced into evidence a prior pre-release notification form Appellant had signed in February 2016 upon his initial release from prison to parole. The form stated that Appellant would reside at the same halfway house listed on the June 2016 form, but instead of designating the Horizon City Police Department as the applicable "local law enforcement authority" as it did on his June 2016 pre-release notification form, the February 2016 form designated the El Paso County Sheriff's Office as the agency with which Appellant was required to register. Spink testified that two days after Appellant's release to parole in February 2016, he did in fact register with the El Paso County Sheriff as he was instructed to do on the form. But, because he had already violated the terms of his parole by taking an unauthorized detour to a hotel en route to the halfway house, he was arrested at the Sheriff's Office on a parole violation warrant and sent to ISF for several months. Appellant's subsequent release and failure to complete sex offender registration requirements in El Paso following his June 2016 release from ISF gave rise to the instant charges.

After the close of evidence, the trial court found Appellant guilty of failing to comply with his sex offender registration obligations and sentenced him to twenty-five years' imprisonment as a habitual felon.

### *Court of Appeals' Opinion*

On direct appeal, the court of appeals reversed Appellant's conviction by concluding that the State failed to prove an essential element of the offense—that Appellant was required to register with the El Paso County Sheriff's Office, as opposed to the Horizon City Police Department as indicated on the pre-release form. *Herron v. State*, No. 08-17-00239-CR, 2019 WL 3451031, at *3-4 (Tex. App.—El Paso July 31, 2019) (not designated for publication). The court looked to the provisions in Code of Criminal Procedure Chapter 62 and noted that the Code provides for three possible entities with which an individual must register—with the office of the chief of police of a municipality if he resides in such municipality, with a county sheriff's office if he lives in an unincorporated area of a county, or with a "centralized registration authority" as designated by the county commissioners court. *Id.* at *2 (citing TEX. CODE CRIM. PROC. arts. 62.001(2), 62.004(a), 62.051, 62.0045). Further, given that Chapter 62 provides for several possible entities with which a person must register, the court determined that the State must "prove the identity of the particular agency with which the accused was obligated to register" based on the location of his residence or intended residence. *Id.* Here, the court noted that Spink and Gutierrez both described the halfway house as being "in Horizon City" and that the June 2016 pre-release notification form indicated the proper registration authority was the "Horizon City Police Department." *Id.* at *3. No evidence indicated that the halfway house "lay outside an incorporated area and solely within El Paso County." *Id.* at *4. Thus, because the evidence indicated that the halfway house lay within the municipality of Horizon City, and not an unincorporated area of El Paso County, the court concluded that Appellant was required to register with the chief of police of Horizon City, not the El Paso County Sheriff's Office. *Id.* As such, the court held that the State failed to prove Appellant violated Chapter 62 by neglecting to register with the Sheriff's Office as alleged in the indictment when he had no statutory obligation to register there. *Id.* The court of appeals also rejected the State's argument that the evidence was sufficient to uphold Appellant's

conviction under the alternative theory that he failed to register his change of address in Aransas County upon absconding there, reasoning that that theory was not alleged in the indictment. *Id.* at *5 ("[T]he State cannot now protect its conviction by arguing that Appellant committed infractions other than those mentioned in the indictment.").

We granted the State's petition for discretionary review on a single ground to consider whether the court of appeals erred in its sufficiency analysis.[7]

## II. Analysis

While the court of appeals was correct in concluding that Appellant was not statutorily obligated to register with the El Paso County Sheriff's Office as alleged in the indictment, our reasoning in upholding that determination is distinct from that of the court of appeals. The registration requirement of Chapter 62 is violated only when an individual "resides or intends to reside" in a particular location for more than seven days and fails to register with the applicable local law enforcement authority within seven days of his "arrival" at that location. *See* TEX. CODE CRIM. PROC. art. 62.051(a). Because it was uncontested that Appellant never physically arrived in El Paso during the relevant time period, he could not have violated an obligation to register there. As such, the facts alleged and proven (failure to register in El Paso with the El Paso County Sheriff's Office) do not amount to a violation of Appellant's registration obligations under Chapter

---

[7] The State's ground for review is as follows:

> In holding the evidence legally insufficient to support the defendant's conviction for failing to register, specifically, that the State failed to prove that the defendant had a duty to register with the El Paso County Sheriff's Office, where there was at least "some evidence" (and specifically, direct evidence of the fact) that the Sheriff's Office was the "local law enforcement agency" with which Herron was required to register, rather than decide merely whether there was legally sufficient evidence that, when viewed in its proper context and the light most favorable to the verdict, could support a rational inference that Herron was, indeed, required to register with the Sheriff's Office, the Eighth Court improperly required the State to meet its evidentiary burden via the Court's preferred manner of evidentiary proof, effectively increasing the State's burden.

62. Further, although we recognize that the facts of this case strongly suggest Appellant's failure to fulfill his registration obligations in some other way (e.g., by failing to register his address in Aransas County after he absconded there), we cannot uphold Appellant's conviction under that alternative theory because the State's indictment alleged only a failure to register in El Paso. Thus, under the hypothetically-correct jury charge applicable to this case which includes the particular location where Appellant failed to register, the evidence is insufficient to support Appellant's conviction.

A.      **Sufficiency of the Evidence Standard**

In addressing a sufficiency-of-the-evidence challenge, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318 (1979). The elements of the offense are defined by the hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically-correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Ramjattansingh v. State,* 548 S.W.3d 540, 546 (Tex. Crim. App. 2018). "'As authorized by the indictment' means the statutory elements of the offense as modified by the charging instrument." *Id.* When a Texas statute lists more than one method of committing an offense or definition of an element of an offense, and the indictment alleges some, but not all, of the statutorily listed methods or definitions, the State is limited to the methods and definitions alleged. *Id.* (citing *Cada v. State*, 334 S.W.3d 766, 773-74 (Tex. Crim. App. 2011); *Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000)). However, the hypothetically-correct jury charge "does not necessarily have to track exactly all of the charging instrument's allegations." *Id.*

Whether an allegation must be included in the hypothetically-correct jury charge depends on whether the variance between the allegation and proof is material. *Id.* at 546-47 (citing *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001)).

Evaluating the sufficiency of the evidence usually involves a consideration of the evidence in relation to each element of the offense while giving deference to "the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. In some instances, however, the sufficiency of the evidence instead turns on the meaning of the statute under which the defendant has been prosecuted; "[i]n other words, does certain conduct actually constitute an offense under the statute with which the defendant has been charged?" *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019); *see also Delay v. State,* 465 S.W.3d 232, 235 (Tex. Crim. App. 2014) (recognizing that sufficiency review sometimes "involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law"). That question, like all statutory construction questions, is a question of law that we review *de novo*. *Alfaro-Jimenez,* 577 S.W.3d at 244.

The evidence here is undisputed. Appellant concedes that he has a reportable conviction for a sexual offense and is required to register as a sex offender. Further, it is uncontested that Appellant agreed, pursuant to the terms of his parole, that upon his June 2016 release from ISF he would go to El Paso to reside at the halfway house and register as a sex offender there. Instead, he absconded to another county. Thus, the issue in this case boils down to a question of statutory interpretation: Are these uncontested facts sufficient to establish a violation of Appellant's duty to register as a sex offender in El Paso with the El Paso County Sheriff's Office as alleged in the

indictment, even though he never went to El Paso? To resolve this question, we turn to the relevant provisions in Chapter 62.

**B.      Statutory Analysis of Relevant Chapter 62 Provisions**

When we interpret statutes, we look to the literal text of the statute and attempt to discern the fair, objective meaning of the text at the time of its enactment. *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020). "[W]e presume that (1) every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible, and (2) the Legislature intended for the entire statutory scheme to be effective." *Crabtree v. State*, 389 S.W.3d 820, 825 (Tex. Crim. App. 2012) (citations and quotation marks omitted). "If the plain language is clear and unambiguous, our analysis ends because 'the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.'" *Day,* 614 S.W.3d at 127 (quoting *Long v. State*, 535 S.W.3d 511, 521 (Tex. Crim. App. 2017)).

Chapter 62 of the Texas Code of Criminal Procedure broadly sets forth the statutory requirements governing sex offender registration in this state. It comprises dozens of separate articles establishing numerous obligations with which individuals subject to its terms must comply. Through a single provision, Article 62.102(a), Chapter 62 criminalizes any failure to comply with its requirements. *See* TEX. CODE CRIM. PROC. art. 62.102(a) ("A person commits an offense if the person is required to register and fails to comply with any requirement of this chapter."). We have described this provision as an "umbrella" statute that may be used to prosecute any violation of a person's sex offender registration duties. *Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015); *Young v. State*, 341 S.W.3d 417, 425 (Tex. Crim. App. 2011). Because of the generalized nature of the umbrella provision in Article 62.102(a), we have held that, to support conviction under the statute, the fact-finder must identify and unanimously agree about the violation of a single statutory duty. *Young*, 341 S.W.3d at 425 (holding that jury need not be unanimous about

manner and means by which defendant violated a single statutory registration duty—there, a failure to timely report a change of address—but observing that unanimity is required under an indictment that "mix[es] various statutory duties contained in different statutory provisions in Chapter 62"). Thus, while Article 62.102(a) may be used to prosecute any failure to comply with sex offender registration obligations, the State must allege and prove, and the fact-finder must unanimously find, that the defendant has committed "one specific statutory failure"—a violation of a discrete statutory provision within the numerous requirements of Chapter 62. *Id.* For purposes of resolving this case, therefore, we must look to the particular failure alleged in the indictment (failure to register with the local law enforcement authority) and the corresponding statutory provision in Chapter 62 to determine whether the fact-finder could have rationally found that Appellant violated the statutory requirement as alleged.

1.     **Because the general registration statute, Article 62.051(a), requires physical presence in a particular location before a person's registration duties are triggered, Appellant was not statutorily required to register in El Paso.**

The discrete requirement that Appellant is alleged to have violated is found in Chapter 62's general registration provision, Article 62.051(a), which provides that a person with a reportable conviction[8] is required to register with the local law enforcement authority wherever he resides or intends to reside for more than seven days. It states:

> (a) A person who has a reportable conviction or adjudication . . . shall register or, if the person is a person for whom registration is completed under this chapter, verify registration as provided by Subsection (f), with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days. If the person does not reside or intend to reside in a municipality, the person shall register or verify registration in any county where the person

---

[8] What constitutes a "reportable conviction" is defined by Article 62.001(5). *See* TEX. CODE CRIM. PROC. art. 62.001(5) (listing enumerated offenses that trigger sex offender registration obligations). It is undisputed that Appellant had a reportable conviction and was required to register, and thus we do not consider that matter in our analysis.

resides or intends to reside for more than seven days. The person shall satisfy the requirements of this subsection not later than the later of:

(1) the seventh day after the person's arrival in the municipality or county; or

(2) the first date the local law enforcement authority of the municipality or county by policy allows the person to register or verify registration, as applicable.

TEX. CODE CRIM. PROC. art. 62.051(a). "Local law enforcement authority" is defined as "the office of the chief of police of a municipality, the office of the sheriff of a county in this state, or a centralized registration authority." *Id.* art. 62.001(2).[9]

The question we must consider is, does the language in Article 62.051(a) impose a duty to register with the local law enforcement authority in a location where a person was expected to reside upon his release from custody pursuant to the terms of his parole, but in which he never in fact resided because he absconded to another jurisdiction? Though this question obviously implicates any number of possible legal infractions for which the person might be held responsible (not the least of which is a violation of the terms of his parole), our analysis here is limited to considering whether such a situation violates the person's duty to register with the local law enforcement authority under Article 62.051(a). We conclude that, because the statute requires

---

[9] "'Centralized registration authority' means a mandatory countywide registration location designated under Article 62.0045." TEX. CODE CRIM. PROC. art. 62.001(11); *see also id.* art. 62.0045 (authorizing a county commissioners court to designate "the office of the sheriff of the county or . . . the office of a chief of police of a municipality . . . to serve as a mandatory countywide registration location"). Further, because Chapter 62 provides several possibilities for where an individual should register depending on his particular address, the Texas Department of Public Safety must "determine which local law enforcement authority serves as the person's primary registration authority based on the municipality or county in which the person resides" and "shall notify each person subject to registration under this chapter of the person's primary registration authority in a timely manner." TEX. CODE CRIM. PROC. art. 62.004(a), (b). These provisions all go to selecting the proper local law enforcement authority with which a person must register based on the person's address, which was the basis for the court of appeals' sufficiency analysis in this case. Because we are instead basing our holding on a lack of any duty on Appellant's part to register his address at the halfway house because he never moved there, we need not dwell on what would have been the proper local law enforcement authority (the El Paso County Sheriff's Office versus the Horizon City Police Department) had he in fact been required to register there.

physical presence before a person's registration obligations are triggered for a particular location, such a person does not commit a violation by failing to report to the local law enforcement authority in a location where he never actually resided or intended to reside.

The statute, by its plain terms, imposes a duty to register with the local law enforcement authority upon a person with a reportable conviction who "resides or intends to reside" in a municipality or county for more than seven days. *Id.* art. 62.051(a). The "resides" language clearly envisions a person's physical presence and his establishment of a domicile. *See* Merriam-Webster's New Collegiate Dictionary 1003 (9th ed. 1986) (stating that reside means "to dwell permanently or continuously;" "occupy a place as one's legal domicile"); Webster's New International Dictionary (3d ed. 1981) (stating that reside means "[to] have a settled abode for a time: have one's residence or domicile"). The "intends to reside" language arguably could be interpreted to mean that a person who at any point "intends to reside" in a place for more than seven days must register there, even if he never actually moves to the intended residence. But the timing language in Article 62.051(a)(1) and (a)(2) refutes such an interpretation of the statutory language. Subsections (a)(1) and (a)(2) clarify that a person must fulfill his registration obligations "not later than the later of" two events—seven days after the person's "arrival" in the municipality or county, or the first date the local law enforcement authority allows the person to register.[10] Thus, this timing provision signals that a person's physical presence (his "arrival") in a particular city or county is a prerequisite to having an obligation to register there. From this it follows that a person has not violated any duty to register with the local law enforcement authority under Article

---

[10] The apparent purpose of the language in Subsection (a)(2) is to extend the seven-day registration window in the event that the local law enforcement authority does not allow the person to complete his registration within seven days of the person's arrival. Because a failure to register within seven days would not be the fault of the registering individual under those circumstances, Chapter 62 provides for an automatic extension of the registration window.

62.051(a) unless and until he has been physically present in a particular location while residing or intending to reside there for more than seven days without registering.

> **2.    Provisions specifically applicable to individuals being released from custody confirm that Appellant was not required to register in a location where he did not reside even though he was expected to reside there.**

Given the particular facts of this case, and given that we are bound to interpret statutes in a manner that gives effect to the entire statutory scheme, we also take note of several related provisions in Chapter 62 specifically addressing requirements for individuals who are being released from the custody of a penal institution.[11] As explained below, these provisions support the notion that a person need not register in a location where he does not reside or intend to reside and is not physically present, even if he previously reported an intent to reside at that location. Specifically, these provisions indicate that if a person does not move to his previously reported "intended residence" upon his release from custody, he must report to his parole officer and/or the local law enforcement authority in the location where he is currently residing, not the law enforcement authority in the location of his expected residence to which he did not move.

Chapter 62 sets forth various requirements that are triggered upon an individual's release from custody. Article 62.053, titled "Prerelease Notification," requires, among other things, that a penal institution releasing a person subject to sex offender registration requirements obtain the address of the person's expected residence upon release and complete the sex offender registration

---

[11] The terms "penal institution" and "released" are statutorily defined in such a way as to plainly apply to this situation involving Appellant's release from ISF. *See* TEX. CODE CRIM. PROC. art. 62.001(3) ("'Penal institution' means a confinement facility operated by or under a contract with any division of the Texas Department of Criminal Justice, a confinement facility operated by or under contract with the Texas Juvenile Justice Department, or a juvenile secure pre-adjudication or post-adjudication facility operated by or under a local juvenile probation department, or a county jail."); 62.001(4) ("'released' means discharged, paroled, placed in a nonsecure community program for juvenile offenders, or placed on juvenile probation, community supervision, or mandatory supervision").

form for that person prior to release. *See* TEX. CODE CRIM. PROC. art. 62.053(a)(3), (a)(4) (mandating that an official of the penal institution shall "obtain the address or, if applicable, a detailed description of each geographical location where the person expects to reside on the person's release," and shall "complete the registration form for the person").[12] The official is then required to send the completed registration form to the Texas Department of Public Safety and to the "applicable local law enforcement authority in the municipality or county in which the person expects to reside[.]" *Id.* art. 62.053(b)(1). Pursuant to specific provisions in Article 62.051, upon their release, such individuals are then required to go to the local law enforcement authority to "verify" their completed registration form within seven days. *See id.* art. 62.051(f) ("Not later than the seventh day after the date on which the person is released, a person for whom registration is completed under this chapter shall report to the applicable local law enforcement authority to verify the information in the registration form received by the authority under this chapter. . . .").

But, importantly, Article 62.051 also contemplates situations in which the individual does not move to his expected residence after his release. In those situations, Article 62.051 provides that a person must report either to his parole officer or, if he is not on parole or some other form of supervision, then he must report to the local law enforcement authority in the location where he is temporarily residing. *See id.* art. 62.051(h), (j). Specifically, with respect to individuals on parole as in the instant case, Subsection (h) states:

> If a person subject to registration under this chapter *does not move to an intended residence* by the end of the seventh day after the date on which the person is released or the date on which the person leaves a previous residence, the person shall:
>
> (1) *report to the* juvenile probation officer, community supervision and corrections department officer, or *parole officer supervising the person* by not later than the

---

[12] This provision also requires that such individuals receive extensive notification of their registration obligations prior to release. *See* TEX. CODE CRIM. PROC. art. 62.053(a)(1)(A)-(I) (setting forth specific requirements of which registrants must be notified by an official of the penal institution prior to release).

seventh day after the date on which the person is released or the date on which the person leaves a previous residence, as applicable, and provide the officer with the address of the person's temporary residence; and

(2) continue to report to the person's supervising officer not less than weekly during any period of time in which the person has not moved to an intended residence and provide the officer with the address of the person's temporary residence.

*Id.* art. 62.051(h) (emphasis added). Thus, a person who is released from custody on parole who does not move to his previously identified expected residence is not required to report to or verify his registration at the local law enforcement authority applicable to that expected residence. Instead, he is required to report to his parole officer that he did not go to his expected address and provide frequent updates on his whereabouts until he establishes a residence or intended residence.[13] Once he establishes a residence or intended residence, then pursuant to the general registration provisions in Article 62.051(a), he is required to register with the applicable local law enforcement authority within seven days of his arrival at such address. *Id.* art. 62.051(a).

In sum, viewing the provisions in Chapter 62 collectively, these statutes provide that an individual is required to register with the local law enforcement authority only in a location where he physically "resides or intends to reside," and that he must do so within seven days of his

---

[13] Article 62.051(j) also contains an analogous provision addressing individuals who are not on parole and are released from custody but do not move to the expected residence listed on their pre-release registration forms. *See* TEX. CODE CRIM. PROC. art. 62.051(j) (requiring such individuals to "report in person to the local law enforcement authority for the municipality or county, as applicable, in which the person is residing" and, "until the person indicates the person's current address as the person's intended residence on the registration form . . . continue to report . . . to that authority not less than once in each succeeding 30-day period and provide that authority with the address at which the person is residing"). Although these provisions support our analysis because they are consistent with the notion that a person is required to register only in a location where he is physically present (e.g., he "is residing"), they are not directly implicated in this case because Appellant was on parole at the time of his release, and thus the provisions in Subsection (h) are more specifically applicable to this scenario. Similarly, we also take note of the change-of-address provisions in Article 62.055, which require sex offenders to report to their primary registration authority seven days before an anticipated move, and to report to their new local law enforcement authority seven days after completing the move. *See id.* art. 62.055. Again, because the provisions specifically addressing individuals being released from custody are more directly applicable to the instant facts, we do not consider the change-of-address provisions here.

"arrival" at that location. *Id.* If a person being released from custody fails to move to the expected residence listed on his pre-release notification form, he is not required to register his address with the local law enforcement authority applicable to that expected residence, but instead must report to his parole officer and/or the local law enforcement agency in the location where he is temporarily residing until he establishes a permanent residence. *Id.* art. 62.051(h), (j). Having examined these statutory requirements, we now turn to consider the particular sufficiency question at issue here.

C.   **Because the hypothetically-correct jury charge must include the location in which the defendant failed to register (a material element), Appellant's conviction for failure to register as a sex offender in El Paso must be overturned.**

Applying our understanding of the relevant statutes to the instant facts, we conclude that Appellant was not required to register in El Paso upon his release from ISF in June 2016 for the simple reason that no evidence showed he ever went there. Thus, we agree with the court of appeals' ultimate conclusion that Appellant could not have violated Chapter 62 by failing to register his address in El Paso with the El Paso County Sheriff's Office as expressly alleged in the indictment when he had no statutory obligation to do so.

Resolving that matter, however, does not completely dispose of the issue before us because our ultimate task is to determine whether the evidence is sufficient under the hypothetically-correct jury charge. *Malik*, 953 S.W.2d at 240. Given the facts of this case, it would be at least theoretically possible, as the State urged to the court of appeals, to uphold Appellant's conviction under the alternative theory that he failed to register his address in Aransas County upon absconding there. Thus, the question arises, does the hypothetically-correct jury charge here include the problematic allegations that Appellant violated his duty to register by particularly failing to register in El Paso with the El Paso County Sheriff's Office? We conclude that, at least with respect to the location where Appellant allegedly failed to register (El Paso County), the hypothetically-correct jury

charge would include that allegation, such that he cannot be convicted of failure to register in some other location under the instant indictment even if the evidence were to support it.

The basis for our conclusion is that Appellant's failure to register in a different location would show "an entirely different offense" than what was alleged, thereby giving rise to a material variance. *Ramjattansingh*, 548 S.W.3d at 547. In support, we note that in our opinion in *Young*, a failure-to-register case involving a violation of the change-of-address provisions under Article 62.055(a), we concluded that the applicable unit of prosecution for that offense is one crime per move. *Young*, 341 S.W.3d at 426 (concluding that "the Legislature intended for the unit of prosecution to be one offense for each change of address"). We reasoned that the focus of Chapter 62 is on giving "'local law enforcement officers a means of monitoring sex offenders who are living within their jurisdiction in order [to] better thwart repeat offenses.'" *Id.* (quoting House Comm. On Criminal Jurisprudence, Bill Analysis, Tex. S.B. 259, 72nd Leg., R.S. (1991)). We continued: "Knowing where a sex offender lives is arguably the simplest and best way to monitor him. By failing to report where he is residing, the sex offender is subverting the objective of the registry. The community and law enforcement want to know where the sex offender lives so they may take proper precautions." *Id.* Thus, we concluded that the unit of prosecution is one offense for each change of address. *Id.*

Although our analysis in *Young* was considering a different provision within Chapter 62, we nevertheless find its reasoning applicable here. Because Chapter 62 makes it a criminal offense each time a person establishes a new residence and fails to register with the applicable local law enforcement authority, this necessarily ties each distinct offense to the particular location where the person is alleged to have resided while failing to fulfill his statutory registration duties. Thus, here, even if the evidence were to show that Appellant failed to register with the local law enforcement authority in Aransas County upon absconding there, that would establish a completely

different offense than his alleged intended residence and failure to register in El Paso. Accordingly, the location in which Appellant allegedly failed to register (here, El Paso) must be included in the hypothetically-correct jury charge. To hold otherwise would permit a material variance from the allegations in the charging instrument. And, because we have already concluded that Appellant's failure to register in El Paso did not constitute an offense because he was not statutorily obligated to register there, the evidence is insufficient to establish a violation of his Chapter 62 obligations under the instant indictment as a matter of law. Given this conclusion, we need not decide, for purposes of resolving this case, whether the hypothetically-correct jury charge would also have to include the identity of the particular local law enforcement authority (the El Paso County Sheriff's Office) with which Appellant allegedly failed to register, which was the focus of the court of appeals' sufficiency analysis.

## III. Conclusion

Although Appellant was charged with failure to register as a sex offender in El Paso, the uncontested evidence indicates that he never went to El Paso to reside during the relevant time period. Because the applicable statutes in Chapter 62 of the Code of Criminal Procedure provide that a person's duty to register is triggered by his physical presence in a particular location, Appellant had no duty to register in El Paso. Thus, as a matter of law, the evidence in the record, as measured by the hypothetically-correct jury charge, did not establish a violation of Appellant's registration obligations under Chapter 62. We affirm the judgment of the court of appeals holding the evidence insufficient and rendering a judgment of acquittal.

DELIVERED: June 30, 2021
PUBLISH